Hillsborough–northern judicial district
No. 2000-495

THE STATE OF NEW HAMPSHIRE

v.

STEVEN B. GORDON

Argued: September 19, 2002
Opinion Issued: December 18, 2002

*Philip T. McLaughlin*, attorney general (*Susan P. McGinnis*, attorney, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Steven B. Gordon, was indicted for aggravated felonious sexual assault, RSA 632-A:2 (Supp. 2002), attempted aggravated felonious sexual assault, RSA 632-A:2; RSA 629:1 (1996) (amended 1999), and kidnapping, RSA 633:1 (1996) (amended 2001). The defendant waived his right to a jury trial and proceeded to trial on stipulated facts. The Trial Court (*Conboy*, J.) found the defendant guilty on all counts and sentenced him to consecutive sentences of life imprisonment with no eligibility for parole on the two aggravated felonious sexual assault charges, and a consecutive sentence of three and one-half to seven years on the kidnapping charge. We affirm.

The three charges at issue arose out of events that occurred on July 7, 1998. On July 19, 1998, the defendant fled the country. On February 13, 1999, the defendant was extradited from Belgium to the United States, based on an extradition request from the Rockingham County Attorney's Office. On February 19, 1999, the defendant was indicted by the Hillsborough County Grand Jury on charges arising out of the July 7, 1998 events. On March 24, 1999, the Hillsborough County Attorney's Office forwarded an extradition request and request for the waiver of the doctrine of specialty to the appropriate authorities. By ministerial decree of July 23, 1999, the Kingdom of Belgium approved "extradition and the extension thereof." On May 12, 2000, the defendant waived his right to a trial, preserved his right to appeal the trial court's pretrial ruling denying his motion to dismiss, and proceeded to trial on stipulated facts.

The defendant raises two issues on appeal. First, he argues that the trial court erred in sentencing him to a mandatory term of life imprisonment without parole because enhanced punishment cannot be imposed unless all of the defendant's prior convictions preceded the commission of the

principal offense, and each prior offense and conviction occurred in chronological order. Second, he argues that the trial court erred by denying his motion to dismiss based on the State's failure to comply with time limits set forth in the extradition treaty between the United States and Belgium.

*I. Sentencing*

The defendant was convicted of aggravated felonious sexual assault in 1993 in Hillsborough County. On July 18, 1998, two weeks after the defendant committed the acts underlying the convictions in this case, he committed five counts of aggravated felonious sexual assault in Rockingham County that led to convictions after a jury trial in 1999. While the acts in Rockingham County occurred after the acts at issue in this case, the Rockingham County convictions were entered before the trial court found the defendant guilty in this case.

RSA 632-A:10-a, III (Supp. 2002) provides: "If the court finds that a defendant has been previously convicted of 2 or more offenses under RSA 632-A:2 . . ., the defendant shall be sentenced to life imprisonment and shall not be eligible for parole at any time." The phrase "previously convicted" is defined as "any conviction obtained by trial on the merits, or negotiated plea with the assistance of counsel and evidencing a knowing, intelligent and voluntary waiver of the defendant's rights, provided, however, that previous imprisonment is not required." RSA 632-A:10-a, IV (Supp. 2002).

At the defendant's sentencing hearing, the State presented the trial court with copies of his prior aggravated felonious sexual assault convictions in Hillsborough County Superior Court (the 1993 conviction) and in Rockingham County Superior Court (the 1999 convictions). The State argued that the defendant had twice previously been convicted of aggravated felonious sexual assault and that therefore the sentencing provisions of RSA 632-A:10-a, III required that he be sentenced to life imprisonment without parole. The defendant argued that because the conduct underlying the 1999 convictions occurred after the conduct in this case, they were not "previous convictions" under the statute and the mandatory life without parole provision did not apply. The trial court disagreed.

"When construing the meaning of a statute, we first examine the language found in the statute and where possible, we ascribe the plain and ordinary meaning to words used." *State v. Cobb*, 143 N.H. 638, 643 (1999) (quotation omitted). When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent. *State v. Comeau*, 142 N.H. 84, 86 (1997). Courts "can neither ignore the plain

language of the legislation nor add words which the lawmakers did not see fit to include." *Appeal of Astro Spectacular*, 138 N.H. 298, 300 (1994) (quotation omitted).

The issue presented is whether under the language of the statute requiring that the defendant be "previously convicted," both the prior conviction and the act underlying it must precede the commission of the act for which the State is seeking an enhanced penalty.

The statute requires that the trial court, at the time of sentencing, determine if the defendant has been previously convicted of two or more offenses of aggravated felonious sexual assault. The statute does not specify that the offense and convictions had to follow in any particular chronological order. *See State v. Hammell*, 147 N.H. 313, 322 (2001) (nothing in plain language of statute indicated that the phrase "previously been imprisoned" means prior to the date of the commission of the third offense). The plain and unambiguous language provides that prior *convictions* are necessary to trigger the enhanced sentencing provision. *See Cornwell v. United States*, 451 A.2d 628, 629 (D.C. 1982); *State v. Hannah*, 617 P.2d 527, 528 (Ariz. 1980) (superseded by statute).

We hold that the statute does not require that the previous convictions precede the commission of the offenses upon which an enhanced sentence is being imposed. Rather, the enhancement provisions of RSA 632-A:10-a, III apply when the defendant has been convicted of the other offenses before being convicted of the principal offense. To conclude otherwise would impose a requirement that the legislature did not intend.

## II. Extradition Treaty

On February 13, 1999, the defendant was extradited from Belgium to the United States based on an extradition request from the Rockingham County Attorney's Office. On February 19, 1999, the defendant was indicted by the Hillsborough County Grand Jury on charges arising out of the July 7, 1998 events in Manchester. On March 24, 1999, the Hillsborough County Attorney's Office forwarded an extradition request and request of waiver of the doctrine of specialty to the appropriate authorities. On July 23, 1999, the State received a telefax from the United States Department of Justice which stated that, "Our Embassy in Brussels heard today from the Belgium Ministry of Justice that the Government of Belgium has granted a waiver of the rule of specialty, allowing Gordon to be prosecuted in Hillsborough County." On July 27, 1999, the Department of Justice was provided with a copy of diplomatic note number 1081, which stated that, "The Embassy of Belgium presents its compliments to the United States Department of State and has the honor to inform the

Department of State that the extradition and extension thereof (agreed upon by ministerial decree of July 23, 1999) of GORDON, Steven Barry has been approved."

At a hearing on his motion to dismiss, the defendant argued that the seventy-five-day detention rule under article 15 of the extradition treaty between the United States and Belgium had been violated, and therefore the trial court lacked jurisdiction over him. The trial court denied the motion, finding that, "Belgium has clearly waived any procedural defects concerning the rule of specialty. In the correspondence that the State has received from the Belgium government, it is clear that the Belgium government has authorized Steven Gordon's extradition for the charges pending in Manchester." In addition, the court stated that, "it is clear that Belgium does not object to any actions taken in connection with the prosecution of the defendant on the Manchester charges, including the detention of the defendant for more than 75 days pending approval by the Belgium government."

On appeal the defendant argues that under the extradition treaty, Hillsborough County had seventy-five days from the date of his extradition either to secure Belgium's consent to prosecute him on its charges or to obtain an extension of the seventy-five-day period. The defendant contends that the State failed to comply with this deadline. The State responds that the defendant lacks standing to raise a challenge under the doctrine of specialty, that the request for waiver of the doctrine of specialty was made within the seventy-five-day time limit and that any delay was attributable to Belgium. Assuming, without deciding, that the defendant has standing, we hold that the trial court did not err. *See State v. Gordon*, 146 N.H. 324, 326 (2001) (assuming defendant has standing, the objections he may raise are limited to those which Belgium might consider to be a breach of the extradition treaty).

The extradition treaty between the United States and Belgium embodies the doctrine of specialty. Article 15 of the treaty provides that, "the person extradited may be detained by the Requesting State for 75 days, or for such longer period of time as the Requested State may authorize, while the request is being processed, in which case, the Requesting State shall transmit to the Requested State a statement of the existence of a warrant of arrest or a finding of guilt or judgment of conviction against the person sought." TREATY, art. 15, sec. 1.

■ The doctrine of specialty "is based on principles of international comity." *Gordon*, 146 N.H. at 326; *see United States v. Saccoccia*, 58 F.3d 754, 766 (1st Cir. 1995), *cert. denied*, 517 U.S. 1105 (1996). "It requires that persons who are surrendered by a government for prosecution based on

specific alleged criminal activity will not be subject to indiscriminate prosecution by the receiving country." *Gordon*, 146 N.H. at 326. The doctrine "forbids the requesting country from prosecuting an extradited defendant for more than is set out in its extradition request. The doctrine of specialty prohibits the requesting nation from prosecuting the extradited individual for any offense other than that for which the surrendering country agreed to extradite." *United States v. Abello-Silva*, 948 F.2d 1168, 1173 (10th Cir. 1991) (quotation omitted), *cert. denied*, 506 U.S. 835 (1992). "Since the doctrine is grounded in international comity rather than in some right of the defendant, the principle of specialty may be waived by the asylum state." *Saccoccia*, 58 F.3d at 767. "Protection of the doctrine ... exists only to the extent that the surrendering country wishes." *United Stated v. Lazarevich*, 147 F.3d 1061, 1063 (9th Cir.) (quotation omitted), *cert. denied*, 525 U.S. 975 (1998).

■ "[E]xtradition treaties, unlike criminal statutes, are to be construed liberally in favor of enforcement because they are in the interest of justice and friendly international relationships." *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997) (quotation omitted). We think the language of article 15 is unambiguous and clearly allows for the State to have detained the defendant for more than seventy-five days during which time the request was being processed by Belgium. As the treaty states, "the person extradited may be detained ... for 75 days, *or for such longer period of time as the requested State may authorize, while the request is being processed ...*." TREATY, art. 15, sec. 1 (emphasis added). Assuming that the seventy-five-day period for making a further extradition request began to run on February 13, 1999, the date the defendant was extradited from Belgium, the State's filing with the appropriate authorities of such further request on March 24, 1999, was well within the applicable time period. The fact that approval was received from Belgium after the seventy-five-day period had expired is of no consequence. Otherwise, "the interests of the demanding country under the Treaty could consistently be undercut by bureaucratic sluggishness within the asylum country's executive agencies." *United States v. Wiebe*, 733 F.2d 549, 554 (8th Cir. 1984) (quotation omitted); *see United States v. Najohn*, 785 F.2d 1420, 1423 (9th Cir.) (there is no reason to require courts to initiate an investigation into the workings of foreign governments), *cert. denied*, 479 U.S. 1009 (1986).

*Affirmed.*

NADEAU, J., concurred; MURPHY, C.J., and SMITH and GALWAY, JJ., superior court justices, specially assigned under RSA 490:3, concurred.