Strafford
No. 2001-605

STATE OF NEW HAMPSHIRE

v.

DAVID F. MELVIN

Argued: September 11, 2003
Opinion Issued: October 14, 2003

*Peter W. Heed*, attorney general (*Susan G. Morrell*, senior assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, by brief and orally, for the defendant.

BRODERICK, J. In 1986, the defendant, David F. Melvin, pled guilty to two counts of aggravated felonious sexual assault. *See* RSA 632-A:2, XI (1986) (amended 1992). In 2001, he pled guilty to fifteen counts of aggravated felonious sexual assault, *see* RSA 632-A:2 (Supp. 2002), and one count of felony indecent exposure, *see* RSA 645:1 (Supp. 2002). Based upon the two 1986 convictions, the Superior Court (*Mohl,* J.) sentenced him to life imprisonment without the possibility of parole pursuant to RSA 632-A:10-a, III (Supp. 2002). The defendant appeals his sentence, arguing that the superior court erroneously: (1) counted his two 1986 convictions as separate convictions for sentence enhancement purposes; and (2) ruled that the State did not have to set forth the 1986 convictions in the current aggravated felonious sexual assault indictments. We affirm.

The 1986 convictions arose from charges alleging that the defendant sexually penetrated the same eight-year-old victim on two different dates in 1985 (February 13 and April 4). After pleading guilty to these charges, the defendant was sentenced to four to twelve years for one charge and received a suspended sentence of seven and one-half to fifteen years on the other charge. He was released from prison in 1990 or 1991.

In May 2001, the defendant entered non-negotiated guilty pleas to the current charges. These charges allege sexual conduct involving three different victims between September 1999 and August 2000. Before sentencing, the defendant requested that the court rule that the mandatory life sentence provision in RSA 632-A:10-a, III did not apply. The court denied the defendant's motion, sentencing him to life in prison without the possibility of parole.

I

RSA 632-A:10-a, III provides: "If the court finds that a defendant has been previously convicted of 2 or more offenses under RSA 632-A:2 . . ., the defendant shall be sentenced to life imprisonment and shall not be eligible for parole at any time." The term "previously convicted" includes a conviction obtained by a negotiated plea "with the assistance of counsel and evidencing a knowing, intelligent and voluntary waiver of the defendant's rights." RSA 632-A:10-a, IV (Supp. 2002).

We have twice interpreted the phrase "previously convicted" in the context of RSA 632-A:10-a, III. *See State v. Gordon*, 148 N.H. 681 (2002) (*Gordon I*); *State v. Gordon*, 148 N.H. 710 (2002) (*Gordon II*). In *Gordon I*, we held that the phrase "previously convicted" did not mean that "the previous convictions [must] precede the commission of the offenses upon which an enhanced sentence is ... imposed." *Gordon I*, 148 N.H. at 684. "Rather, the enhancement provisions of RSA 632-A:10-a, III apply when the defendant has been convicted of the other offenses before being convicted of the principal offense." *Id.* Under *Gordon I*, it is not necessary that the prior conviction used to enhance a defendant's sentence under RSA 632-A:10-a, III also be a prior offense.

In *Gordon II*, we addressed whether RSA 632-A:10-a, III applied in the context of multiple convictions arising out of a "single spasm of criminal activity." *Gordon II*, 148 N.H. at 714 (quotation omitted). We ruled that although the language of the statute was ambiguous in this context, its legislative history and construction revealed that it was aimed at repeat offenders. *Id.* at 714-16. Accordingly, we concluded that it was not intended to apply to a defendant who sexually assaulted three victims in one simultaneous criminal episode. *Id.* at 716. In *Gordon II*, we left open the question presented in this appeal, which is "whether multiple convictions arising from multiple criminal episodes should be treated as separate convictions regardless of the number of judicial proceedings involved." *Id.*

█ The defendant correctly concedes that the trial court's construction of RSA 632-A:10-a, III is consistent with *Gordon II*. He admits that his 1986 convictions stem from separate criminal episodes, and, thus, under *Gordon II*, are separate convictions for enhancement purposes. He asks the court to abandon the "single criminal episode" test of *Gordon II*, however, and to hold that because his 1986 convictions were entered in one proceeding, they should be treated as one prior conviction for sentence enhancement purposes. We decline his invitation. Because the defendant's two 1986 convictions stem from separate criminal incidents, we hold it appropriate to treat them as two prior criminal convictions for sentence enhancement purposes.

The decisions of federal courts are in accord. "Most courts have held that a defendant is subject to the enhanced penalty, regardless of the number of adjudications, as long as each conviction arises out of a separate and distinct criminal episode." *United States v. Schieman*, 894 F.2d 909, 911 (7th Cir.), *cert. denied*, 498 U.S. 856 (1990). In *Deal v. United States*, 508 U.S. 129 (1993), the United States Supreme Court applied the federal Armed Career Criminal Act of 1984, which requires imposing an enhanced

sentence for a "second or subsequent conviction" for carrying and using a firearm during a violent crime, to a defendant convicted in a single proceeding of six such counts. 18 U.S.C. § 924(c)(1) (2000). In context, the court ruled that the word "conviction" unambiguously referred to "the finding of guilt by a judge or jury." *Deal*, 508 U.S. at 132. Accordingly, it found no error in applying the enhanced sentencing statute to the defendant "simply because he managed to evade detection, prosecution, and conviction for the first five offenses and was ultimately tried for all six in a single proceeding." *Id.* at 137.

State courts interpreting state sentencing enhancement statutes have similarly concluded that two or more guilty pleas or convictions entered on one day constitute separate convictions for sentencing enhancement purposes where the offenses arose from separate criminal transactions. *See* Annotation, *Chronological or Procedural Sequence of Former Convictions as Affecting Enhancement of Penalty Under Habitual Offender Statutes*, 7 A.L.R.5TH 263, 310-27 (1992); *see also, e.g., State v. Cabral*, 785 P.2d 1314, 1316 (Haw. 1990) (fact that sentencing imposed on same day and guilty pleas entered at same hearing did not merge two convictions into single prior conviction under repeat offender sentencing statute); *State v. Smith*, 777 P.2d 1226, 1232-33 (Idaho Ct. App. 1989) (even though, ordinarily, several convictions entered on same day are not treated as multiple prior felonies, where convictions were "distinguishable incidents of criminal conduct," it was permissible to treat them as evidence of multiple prior felonies).

The defendant asserts that his sentence to life without parole renders RSA 632-A:10-a, II (Supp. 2002) superfluous. He reasons that had RSA 632-A:10-a (Supp. 2002) been the law in 1986 and had he been sentenced pursuant to it, he would have received two sentences under subsection I of the statute, which pertains to sentences for first convictions. *See* RSA 632-A:10-a, I; *Gordon II*, 148 N.H. at 716. He argues that by sentencing him to life without parole, the trial court, in effect, bypassed subsection II, which governs sentences for second convictions. *See* RSA 632-A:10-a, II; *Gordon II*, 148 N.H. at 716. We disagree. We believe that the statutory scheme requires that when two offenses occurring at different times are consolidated, upon conviction of both, one of the convictions may be used as the prior conviction for the other. *See State v. Superior Court in and for Maricopa*, 689 P.2d 539, 541 (Ariz. 1984). Thus, had the defendant been sentenced pursuant to RSA 632-A:10-a, he would have received a sentence for a first conviction for one of the 1986 convictions and a sentence for a second conviction for the other 1986 conviction. His sentence for a third conviction in 2001 was consistent with the overall statutory scheme.

The defendant argues that the "single criminal episode" test potentially yields absurd results. To illustrate his point, he asks the court to consider two hypothetical defendants. The first hypothetical defendant assaults three different victims six separate times in one episode. The defendant correctly points out that if this defendant were convicted of a "single criminal episode," such conviction would only constitute a single conviction for sentencing purposes. *See Gordon II*, 148 N.H. at 714-16. The defendant argues that it is illogical that a defendant who is convicted of virtually identical acts committed over a short period of time is subject to an enhanced sentence. We disagree. Because the enhanced sentences under RSA 632-A:10-a, III are specifically intended for repeat offenders, *see id.* at 715, the defendant who is convicted of discrete acts, not constituting a "single criminal episode," is appropriately subject to an enhanced sentence.

The second hypothetical defendant commits a single assault in 1985, but later commits "dozens of assaults" on multiple victims in one episode. While we believe it unlikely that a defendant could commit "dozens of assaults" on multiple victims in a single criminal episode, this hypothetical bears some similarity to the facts of *Gordon II*. .

In *Gordon II*, the defendant had been convicted of aggravated felonious sexual assault in 1993. *Gordon II*, 148 N.H. at 713. In 1998, he assaulted two victims in a single criminal episode. *Id.* at 711-12. The trial court counted the defendant's 1993 conviction as the first conviction, the convictions for charges involving one of the 1998 victims as his second conviction, and the convictions for charges involving the other 1998 victim as his third conviction. *Id.* at 713. We held that it was error to treat the 1998 convictions as separate convictions for sentence enhancement purposes because they arose out of a single criminal episode. *Id.* at 715-16.

Although the defendant argues that these hypothetical defendants deserve "greater punishment" than he does, this is a matter of public policy reserved for the legislature, not for us. *See Minuteman, LLC v. Microsoft Corp.*, 147 N.H. 634, 641-42 (2002).

The defendant contends that it could not have been the legislature's intent to impose an enhanced sentence upon defendants who commit multiple offenses on separate occasions before being apprehended and brought to justice, because such a pattern is "hardly uncommon for sex offenders." The legislative history reveals, however, that repeat offenders, such as the defendant, were precisely the legislature's concern. *See Gordon II*, 148 N.H. at 714-15. The legislative history of RSA 632-A:10-a makes clear that our legislature was concerned not just with deterring crime, but also with punishing the persistent offender.

As the report of the *ad hoc* legislative committee charged with reviewing New Hampshire's rape law indicates, the legislature was troubled by the "high incidence of repeat offenders," noting that "on average, convicted rapists have committed seven other rapes for which they are not arrested or prosecuted." REPORT OF THE JOINT AD HOC COMMITTEE TO REVIEW NEW HAMPSHIRE'S RAPE LAWS at 5 (January 27, 1992) (REPORT). The committee's "clear consensus" was that persons convicted of these crimes should face severe penalties and, absent mitigating factors, serve at least the minimum sentence under the law. *Gordon II*, 148 N.H. at 715 (quotation omitted); *see* Laws 1992, 254:1. The committee had been advised that extended term provisions "are viewed by the system as being for special circumstances, . . . as the exception, not part of the norm." REPORT, *supra* at 6 (quotation omitted). Accordingly, in addition to proposing the enhanced sentences now codified at RSA 632-A:10-a, the committee proposed "emphasizing the pertinent parts of the extended term provisions of RSA 651:6 in the sexual assault statutes to make them 'more the norm' when appropriate." *Id.* at 5-6.

The defendant argues that under the "single criminal episode test," two defendants, each of whom assaults a victim multiple times on separate occasions over a several month period could receive different sentences depending upon whether the assaults are charged in separate indictments or in a single pattern indictment. *See* RSA 632-A:1, I-c (1996); RSA 632-A:2, III (1996). He asserts that, if convicted, the defendant charged in the single pattern indictment would have only one conviction for sentence enhancement purposes, while the other defendant "whose conduct was qualitatively no different" would have multiple prior convictions and would be subject to an enhanced sentence. He contends that this is an "arbitrary" and "unjust" result. Addressing the question of whether separate criminal episodes must be charged in separate indictments to be considered separate convictions for sentence enhancement purposes is beyond the scope of this appeal. We leave resolution of this question for another day.

The defendant asserts that while the "single criminal episode" test follows from the federal Armed Career Criminal Act, it does not follow from RSA 632-A:10-a, III because the federal statute, unlike RSA 632-A:10-a, III, defines "previous convictions" as those that are "committed on occasions different from one another." 18 U.S.C. § 924(e)(1) (2000). He notes also that the federal statute contains only two tiers, while RSA 632-A:10-a contains three tiers. In *Gordon II*, we adopted the "single criminal episode" test only after carefully considering both the legislative intent behind and the structure of RSA 632-A:10-a. *See Gordon II*, 148 N.H. at 714-16. The statute's legislative history and structure support the "single

criminal episode" test we approved in *Gordon II*. We decline to depart from it today.

## II

Alternatively, the defendant contends that we must reverse because the State failed to set forth the 1986 convictions in the current indictments. He acknowledges that the United States Supreme Court has ruled that the Federal Due Process Clause does not require prior convictions used to enhance sentences to be alleged in the indictment. *See Almendarez-Torres v. United States*, 523 U.S. 224, 239-47 (1998); U.S. CONST. amend. XIV. Nonetheless, he asks the court to interpret the Federal Due Process Clause differently because he expects that the United States Supreme Court someday will reverse *Almendarez-Torres*. When interpreting federal law, however, we are bound by the United States Supreme Court's current explication of it. *See State v. Ball*, 124 N.H. 226, 235 (1983); *State v. Tallard*, 149 N.H. 183, 186 (2003).

Relying principally upon *State v. McLellan*, 146 N.H. 108, 115 (2001) (*McLellan I*), the defendant next argues that where the sentence enhancement sought is life without parole, the Due Process Clause of the State Constitution requires the State to allege prior convictions used for sentence enhancement in the indictment. *See* N.H. CONST. pt. I, art. 15.

Part I, Article 15 of the New Hampshire Constitution safeguards a defendant's right to grand jury indictment for any offense punishable by imprisonment for more than a year. *State v. LeBaron*, 148 N.H. 226, 230 (2002). The indictment must give the defendant enough information to allow him to prepare for trial and include all of the elements of the offense charged. *Id.* at 230-31. Part I, Article 15 also entitles a criminal defendant to a jury determination on all factual elements of the crime charged. *Id.* at 231.

Because in *McLellan I* we held that, at sentencing, the State must prove prior convictions used to enhance a defendant's sentence to life without parole under RSA 632-A:10-a, III beyond a reasonable doubt, the defendant reasons that these prior convictions constitute an element of the charged offense. *See McLellan I*, 146 N.H. at 115. The defendant misconstrues *McLellan I*. In *McLellan I*, we did not hold that due process required the State to plead prior convictions used to enhance a defendant's sentence to life without parole in the indictments or to prove these convictions to a jury. Nor did we imply that these convictions either constitute a separate element of the crime of aggravated felonious sexual assault or create a separate crime. The defendant's argument also overlooks our decision in *State v. McLellan*, 149 N.H. 237 (2003)

(*McLellan II*). In *McLellan II*, we specifically held that RSA 632-A:10-a, III "does not define a separate offense or even a separate element of the underlying offense of aggravated felonious sexual assault." *McLellan II*, 149 N.H. at 241.

The defendant contends that the severity of a life without parole sentence justifies heightened due process protections under the State Constitution, which include requiring the State to allege prior convictions used to enhance a sentence to life without parole in the indictment. We rejected a similar argument in *LeBaron*, 148 N.H. at 232. In *LeBaron*, we held that Part I, Article 15 of the State Constitution did not require the State to allege a defendant's prior convictions used to enhance his sentence in the indictment nor prove these convictions to a jury. *Id.* We further held that this rule applied even where the conviction of the subsequent offense carries a heavier penalty. *See id.* Our conclusion in *McLellan I* that "the gravity of the potential sentence of life imprisonment without parole requires a heightened standard of proof in order to minimize the risk of error" does not mandate a different result. *McLellan II*, 149 N.H. at 242-43. *LeBaron* and *McLellan I* adequately protect the due process rights of defendants subject to a life without parole sentence under RSA 632-A:10-a, III.

*Affirmed.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.