Rockingham
No. 2004-320

PETITION OF THE STATE OF NEW HAMPSHIRE

Argued: April 5, 2005
Opinion Issued: May 9, 2005

*Kelly A. Ayotte,* attorney general (*Stephen D. Fuller,* senior assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson,* chief appellate defender, of Concord, on the brief, and *David M. Rothstein,* deputy chief appellate defender, on the brief and orally, for the defendant.

GALWAY, J. The State of New Hampshire filed a petition for writ of certiorari challenging a decision of the Superior Court (*T. Nadeau,* J.) not to impose a mandatory life imprisonment sentence under RSA 632-A:10-a, III (Supp. 2004) upon the defendant, Jesse Labrie. We deny the petition.

The record supports the following facts. The State charged the defendant with thirteen counts of aggravated felonious sexual assault (AFSA) against three victims, all under thirteen years of age. At the time of the charged offenses, the defendant was twenty or twenty-one years old, and had no previous criminal record. Five indictments alleged assaults against one victim, each of which took place during a different month in 2002. The defendant was convicted of these five counts following a trial in January 2004.

The trial court sentenced the defendant on two of his convictions to consecutive, stand-committed terms of ten to twenty years imprisonment. With respect to the third conviction, after considering whether a sentence of life imprisonment without parole was required under RSA 632-A:10-a, III, the trial court declined to impose such a sentence. The court ruled that as a matter of due process, the language of the statute did not afford the defendant fair notice of the consequences of his crimes at the time he committed them. The court also ruled that imposing a mandatory life sentence in this case would be disproportionate to the crime and would thus violate Part I, Article 18 of the State Constitution. The State then filed the instant petition for writ of certiorari challenging the trial court's order.

The State argues that under RSA 632-A:10-a and our prior decisions, the trial court was required to sentence the defendant to life without parole. *See State v. Gordon,* 148 N.H. 681 (2002) (*Gordon I*); *see also State v. Gordon,* 148 N.H. 710 (2002) (*Gordon II*); *State v. Melvin,* 150 N.H. 134 (2003). The defendant contends, conversely, that: (1) the trial court's ruling was not clearly illegal; (2) the defendant's case is factually distinguishable from cases in which this court has affirmed sentences of life without parole and the statute does not require such a result; (3) the imposition of life without parole would violate the defendant's State and federal

constitutional rights to notice and due process; and (4) life without parole is disproportionate to the defendant's offense.

 Certiorari is an extraordinary remedy and is not granted as a matter of right but rather at the discretion of the court. *Petition of Turgeon,* 140 N.H. 52, 53 (1995); *see* SUP. CT. R. 11. We exercise our power to grant the writ sparingly and only where to do otherwise would result in substantial injustice. *In re Ryan G.,* 142 N.H. 643, 645 (1998). Certiorari review is limited to whether the trial court acted illegally with respect to jurisdiction, authority, or observance of the law, whereby it arrived at a conclusion which could not legally or reasonably be made, or abused its discretion or acted arbitrarily, unreasonably, or capriciously. *See Petition of the State of New Hampshire,* 150 N.H. 296, 297 (2003).

We first turn to the statute. In matters of statutory interpretation, we are the final arbiter of legislative intent as expressed in the words of the statute considered as a whole. *State v. Clark,* 151 N.H. 56, 57 (2004). We construe provisions of the Criminal Code according to the fair import of their terms and to promote justice. *See* RSA 625:3 (1996); *In re Juvenile 2003-187,* 151 N.H. 14, 16 (2004). In doing so, we must first look to the plain language of the statute to determine legislative intent. *State v. Hull,* 149 N.H. 706, 709 (2003). Where more than one reasonable interpretation of the statutory language exists, we review legislative history to aid our analysis. *State v. Rosario,* 148 N.H. 488, 489 (2002); *see State v. Williams,* 143 N.H. 559, 561-62 (1999).

RSA 632-A:10-a provides in pertinent part:

> II. If a court finds that a defendant has been *previously convicted* under RSA 632-A:2 ... the defendant shall be sentenced to a maximum sentence which is not to exceed 40 years and a minimum which is not to exceed ½ of the maximum.
>
> III. If the court finds that a defendant has been *previously convicted of 2 or more offenses* under RSA 632-A:2 ... the defendant shall be sentenced to life imprisonment and shall not be eligible for parole at any time.

RSA 632-A:10-a, II, III (Supp. 2004) (emphasis added). The term "previously convicted" is defined in section IV of the statute as "any conviction obtained by trial on the merits, or negotiated plea with the assistance of counsel and evidencing a knowing, intelligent and voluntary waiver of the defendant's rights, provided, however, that previous imprisonment is not required." RSA 632-A:10-a, IV (Supp. 2004).

The question on appeal is whether a person convicted of three AFSA offenses must serve a mandatory life sentence without parole where he receives all three convictions in the same adjudication, not having any previous conviction. We have not interpreted the phrase "previously convicted of 2 or more offenses" in the context of three convictions arising out of one adjudication.

We have, however, interpreted the phrase "previously convicted" as it is used in RSA 632-A:10-a, III in other contexts. *See Gordon I*, 148 N.H. at 683-84; *Gordon II*, 148 N.H. at 713-16; *Melvin*, 150 N.H. at 135. In *Gordon I*, the defendant was convicted of two counts of AFSA. *Gordon I*, 148 N.H. at 683. At the time of sentencing in 2000, Gordon's record showed a 1993 conviction as well as 1999 convictions from five AFSAs on two victims, during a single criminal episode that occurred after the criminal episode for which he was being sentenced. *Id.*; *see Gordon II*, 148 N.H. at 710. We held in *Gordon I* that the statute did "not require that the previous convictions precede the commission of the offenses upon which an enhanced sentence is being imposed." *Gordon I*, 148 N.H. at 684. Rather, "the enhancement provisions of RSA 632-A:10-a, III apply when the defendant has been convicted of the other offenses before being convicted of the principal offense." *Id.* We concluded that the "plain and unambiguous language provides that prior *convictions* are necessary to trigger the enhanced sentencing provision." *Id.*

In *Gordon II* we addressed whether the statute applied in the context of multiple convictions arising out of a "single spasm of criminal activity." *Gordon II*, 148 N.H. at 714. The defendant committed five AFSAs on two victims, during a single criminal episode. *Id.* at 713-16. At the time of his offenses, Gordon had the AFSA conviction entered previously in 1993. *Id.* at 711-13. We concluded that the phrase "previously convicted" in section II of the statute did not clearly instruct sentencing courts as to how to treat separate convictions arising out of a single episode. *Id.* at 714. Looking to legislative history, we found nothing to indicate that "a sentence of life imprisonment without parole is intended to apply to individuals who happen to acquire three convictions as a result of a single criminal episode." *Id.* at 715-16. Because we determined that the legislature's intent was for the mandatory sentencing requirements to apply to "repeat offenders," we held that the statute did not apply to a defendant who committed sexual assault three times "in one simultaneous criminal episode." *Id.* at 716. Thus, several AFSAs arising out of the same criminal episode would be treated as one conviction under the enhancement statute.

In *Melvin*, we addressed whether multiple convictions arising from multiple criminal episodes should be treated as separate convictions regardless of the number of proceedings involved. *Melvin*, 150 N.H. at 136. The defendant had two AFSA convictions entered in 1986, in the same judicial proceeding, for separate assaults on the same victim. *Id.* at 135. He then entered non-negotiated disposition guilty pleas to fifteen counts of AFSA in 2001. *Id.* To determine the appropriate sentence, we stated that "the word 'conviction' unambiguously referred to 'the finding of guilt by a judge or jury.'" *Id.* at 137 (quoting *Deal v. United States*, 508 U.S. 129, 132 (1993)). Applying the *Gordon II* "single criminal episode" test, and considering legislative history and the statutory scheme, we held that it was appropriate pursuant to RSA 632-A:10-a, III to treat the two 1986 convictions as two prior criminal convictions because they stemmed from two separate criminal incidents. *Melvin*, 150 N.H. at 136-40.

In the instant case, we conclude that the statute, as applied to the defendant, is unclear. Specifically, when we look to the entire phrase "previously convicted of 2 or more offenses," we note that the legislature worded sections II and III of the statute differently. *See* RSA 632-A:10-a, II, III. While section II focuses on convictions, section III refers not only to convictions but also "offenses." Therefore, we are uncertain whether "previously convicted of 2 or more offenses" means that a repeat sex offender must serve life without parole even when all three convictions happen in the same adjudication, where there was no prior conviction.

The legislative history of the statute is also unclear as to how to reconcile sections II and III. *See Hooksett Conservation Comm'n*, 149 N.H. at 65; *see also Gordon II*, 148 N.H. at 714-16 (looking to legislative history to construe ambiguous statute in context of multiple convictions arising out of one simultaneous criminal episode); *Melvin*, 150 N.H. at 136-40 (looking to legislative history to determine whether multiple convictions arising from multiple criminal episodes should be treated as separate convictions regardless of number of judicial proceedings involved). Although we recognize the legislature's intent that "persons convicted of these crimes should face severe penalties," REPORT OF THE JOINT AD HOC COMMITTEE TO REVIEW NEW HAMPSHIRE'S RAPE LAWS at 5 (Jan. 27, 1992) (REPORT), and that the enhanced sentences under RSA 632-A:10-a, III are specifically intended for repeat offenders, *see Melvin*, 150 N.H. at 138, we also find legislative intent to provide a system of reform for sex offenders and minimize the burden on State resources. *See* REPORT at 4-5 (discussing treatment resources, parole, registry for tracking released sex offenders, easing burden of payment for court ordered psychiatric

evaluations and treatment). It arguably would be contrary to this purpose to incarcerate for life sex offenders, like the defendant, who receive three or more convictions in their first adjudication, because such offenders would not have been given the opportunity for meaningful reform and would greatly burden New Hampshire's prison facilities.

Although both the statutory language and legislative intent create uncertainty in this case, federal case law offers insight. In *Deal v. United States*, the United States Supreme Court focused on the import of the word "offenses" when construing a phrase of the federal Armed Career Criminal Act, 18 U.S.C. § 924(c)(1) (1988 ed. Supp. III) (amended 2000), which provides that

> [w]hoever, during and in relation to any crime of violence . . . uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence . . . , be sentenced to imprisonment for five years . . . . In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years . . . .

*Deal*, 508 U.S. 129, 130 (1993) (quotation omitted). The Court held that because the statute required proof of a "conviction," a defendant who committed multiple offenses in separate episodes faced the enhanced sentence, regardless of the timing of the convictions. *Id.* at 135. The majority noted that the opinion required "textual distinctions" and some "sentence parsing." *See id.* at 134. Relying on reasoning from *Gonzalez v. United States*, 224 F.2d 431, 434 (1st Cir. 1955), the Court stated that the result would have been different had the Act used the word "offense."

> A second offense, as used in the criminal statutes, is one that has been committed after conviction for a first offense . . . . The present statute, however, does not use the term "offense," so it cannot possibly be said that it requires a criminal act after the first conviction. What it requires is a *conviction* after the first conviction."

*Deal*, 508 U.S. at 135 (quotation omitted). Under the *Deal* interpretation, rehabilitation and recidivism are implicated by the use of the word "offense." Unlike the statute in *Deal*, RSA 632-A:10-a, III uses "offense" in the phrase "previously convicted of 2 or more offenses." We are left, therefore, with ambiguity as to what the legislature intended the appropriate sentence to be when all three convictions occur in one adjudication, where there was no prior conviction under RSA 632-A:2.

In addition, we are mindful that the sentencing discretion left to the trial judge differs in sections II and III. While section II expands the discretion of the sentencing judge when applying an enhanced sentence, section III eliminates all discretion when the defendant is "previously convicted of 2 or more offenses," and mandates imposition of the maximum penalty short of capital punishment—life in prison without the possibility of parole. *See* RSA 632-A:10-a, II, III. Therefore, if all three convictions can occur in one adjudication as was the case here, then all defendants who fit that category would not receive any chance for rehabilitation, with the resulting burden on State resources, regardless of the individual circumstances of the offenses or the individual characteristics of the offender.

■■ Because the imposition of a sentence of life without the possibility of parole is both mandatory and the harshest sentence available, besides the death penalty, we think it is crucial that the legislature make clear the sentencing implications of "previously convicted of 2 or more offenses." Taking all the above factors into consideration, we conclude that the legislature did not intend for section III to apply when, as here, the defendant is convicted of three or more offenses under RSA 632-A:2 in one proceeding, and where there was no prior conviction under RSA 632-A:2. We hold, therefore, that while the defendant is subject to the enhanced sentence under section II of the statute, he is not subject to section III. *See* RSA 632-A:10-a, II, III. We think the legislature's intent to punish "repeat offenders" with "severe penalties" is met by the trial court's ability to impose an enhanced sentence of up to forty years in prison for *each* conviction beyond the first, even when multiple convictions are obtained in a single proceeding. *See Melvin*, 150 N.H. at 138; *Report* at 5.

If the legislature intended to mandate that an offender, like the defendant, who is convicted three times in one proceeding without a prior conviction under RSA 632-A:2, should go to prison for life, then it should make its intention unmistakably clear. Because we reach our decision by interpreting the relevant statute, we need not address the defendant's constitutional claims. *See Simplex Technologies v. Town of Newington*, 145 N.H. 727, 732 (2001) (declining to address constitutional claims where case decided on other grounds).

The trial court's sentencing fell within the range of its reasonable discretion. We therefore deny the State's petition for writ of certiorari.

*Petition denied.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.