Merrimack
No. 2006-079

RANDY DUQUETTE

v.

WARDEN, NEW HAMPSHIRE STATE PRISON

Argued: October 3, 2006
Opinion Issued: January 19, 2007

*Orr and Reno, P.A.*, of Concord (*Pamela E. Phelan* and *Phillip Rakhunov* on the brief, and *Ms. Phelan* orally), for the petitioner.

*Kelly A. Ayotte*, attorney general (*Susan P. McGinnis*, assistant attorney general, on the brief and orally), for the State.

Randy Duquette, *pro se*, by brief.

*Douglas, Leonard & Garvey, P.C.*, of Concord (*Richard J. Lehmann* on the brief), for Kenneth Violette, as *amicus curiae*.

Steven Pelletier *& a.*, *pro se*, by brief, as *amici curiae*.

DALIANIS, J. The petitioner, Randy Duquette, appeals from an order of the Superior Court (*Brennan*, J.) dismissing his petition for writ of habeas corpus. We affirm.

The petitioner asked the court to correct the "illegal" consecutive sentences imposed upon him following his 1997 convictions on six counts of aggravated felonious sexual assault, *see* RSA 632-A:2 (1996) (amended 1997, 1998, 1999, 2003), and one count of felonious sexual assault against a victim under the age of thirteen, *see* RSA 632-A:3, III (1996) (amended 2003). The court imposed three consecutive prison terms of ten to twenty years, stand committed, as well as three terms of ten to twenty years and one term of three-and-one-half to seven years to run concurrently with the last of the three consecutive terms. *State v. Duquette*, 153 N.H. 315, 315-16 (2006).

On appeal, the petitioner argues that the superior court has no statutory authority to impose consecutive sentences. He further argues that imposing consecutive sentences violates state and federal due process guarantees, the state guarantee of proportionality in sentencing and the constitutional doctrine of separation of powers.

While the State contends that the petitioner did not preserve his appellate arguments because they differ from those he raised in the trial court, it urges us to address them "because the appeals of the amici, which have been stayed pending resolution of this appeal, raise the same types of issues, and because these issues are likely to be properly raised in the future." In light of these pending cases and the importance of the issue

raised, we address, in turn, the petitioner's statutory and constitutional arguments.

## I. Statutory Arguments

The petitioner first argues that the superior court lacks statutory authorization to impose consecutive sentences. He observes that the plain language of RSA 651:2 (1996) (amended 1996, 1998, 1999, 2006), which is the statute the trial court relied upon when dismissing his habeas corpus petition, RSA 632-A:10-a (1996) (amended 1998, 2006), which is the statute under which he was sentenced, and RSA 651:3 (1996), which pertains to the calculation of sentences, does not authorize the superior court to impose consecutive sentences. The State concedes that "there is no general explicit statutory authority" for consecutive sentences, but counters that the trial court has inherent common law authority to impose such sentences.

In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Debonis v. Warden, N.H. State Prison*, 153 N.H. 603, 605 (2006). We construe provisions of the Criminal Code according to the fair import of their terms and to promote justice. *See* RSA 625:3 (1996); *Petition of State of N.H.*, 152 N.H. 185, 187 (2005). In doing so, we must first look to the plain language of the statute to determine legislative intent. *Petition of State of N.H.*, 152 N.H. at 187. Where more than one reasonable interpretation of the statutory language exists, we review legislative history to aid our analysis. *Id.*

We begin by examining the plain language of RSA 651:2, which provides in pertinent part:

> I. A person convicted of a felony or a Class A misdemeanor may be sentenced to imprisonment, probation, conditional or unconditional discharge, or a fine.
>
> II. If a sentence of imprisonment is imposed, the court shall fix the maximum thereof which is not to exceed:
>
> (a) Fifteen years for a class A felony,
>
> (b) Seven years for a class B felony,
>
> (c) One year for a class A misdemeanor,
>
> (d) Life imprisonment for murder in the second degree, and, in the case of a felony only, a minimum which is not to exceed 1/2 of the maximum, or if the maximum is life imprisonment, such minimum term as the court may order.

RSA 651:2, I, II.

While this language is silent with respect to whether a trial court may impose consecutive sentences in cases such as this one, RSA 651:2, II-b provides for consecutive sentences for those convicted of felonious use of a firearm. It requires the court to impose a minimum mandatory sentence in addition to any punishment provided for the underlying felony. "Neither the whole nor any part of the additional sentence of imprisonment hereby provided shall be served concurrently with any other term nor shall the whole or any part of such additional term be suspended." RSA 651:2, II-b.

The plain language of RSA 632-A:10-a is also silent as to whether consecutive sentences may be imposed. That statute provides, in pertinent part:

Notwithstanding RSA 651:2:

I. A person convicted of aggravated felonious sexual assault under the provisions of RSA 632-A:2, I shall be sentenced to a maximum sentence which is not to exceed 20 years and a minimum which is not to exceed 1/2 of the maximum.

RSA 632-A:10-a, I.

Similarly, RSA 651:3 does not address whether the trial court may impose consecutive sentences. That statute provides that a sentence of imprisonment "commences when it is imposed if the defendant is in custody or surrenders into custody at that time." RSA 651:3, I. "Otherwise, it commences when he becomes actually in custody." *Id.*

Thus, we agree with the parties that there is no explicit statutory authority for consecutive sentences, except under RSA 651:2, II-b, which pertains only to those convicted of felonious use of a firearm, and various penalties narrowly applicable to prisoners and parolees. *See* RSA 597:14-b (2001); RSA 642:8 (1996); RSA 642:9 (Supp. 2006). The State argues, however, that the repeal of former RSA 651:3, III (1974) (repealed 1975) revived the court's common law authority to impose consecutive sentences. Former RSA 651:3, III provided for all sentences to run concurrently except those of persons convicted of a felony either during imprisonment or an escape from imprisonment. The State relies upon *State v. Rau,* 129 N.H. 126 (1987), to support its argument:

RSA 651:3, III, repealed in 1975, provided in pertinent part that "any multiple sentences of imprisonment imposed on any person shall be served concurrently." Since its repeal, New Hampshire law no longer specifies whether multiple sentences imposed run concurrently or consecutively. The legislature repealed RSA 651:3, III to afford a judge, with discretion, the

option to impose consecutive sentences in order to deal with that group of criminals who need the deterrent of consecutive sentences. The legislature additionally indicated that in the remainder of cases "[judges] should almost always impose sentences concurrently." N.H.S. JOUR. 306 (1975).

*Rau*, 129 N.H. at 129-30 (citation omitted). The petitioner contends that this language is dicta. He further asserts that the repeal of former RSA 651:3, III did not revive the superior court's authority to impose consecutive sentences. We assume solely for the purpose of this appeal that the language from *Rau* upon which the State relies is dicta. We therefore first address whether the judiciary had common law authority to impose consecutive sentences.

"Firmly rooted in common law is the principle that the selection of either concurrent or consecutive sentences rests within the discretion of sentencing judges." A. W. CAMPBELL, LAW OF SENTENCING 278 (2d ed. 1991). The common law precedent for consecutive sentencing can be traced to pre-Revolutionary England, such law being therefore the common law model for New Hampshire and her twelve "sisters" at the beginning of the Republic. *See State v. Mahaney*, 62 A. 265, 265-66 (N.J. 1905) (collecting cases). American jurisprudence traces a court's discretion to impose consecutive sentences to the pre-Revolution English case of *Rex v. Wilkes*, 98 Eng. Rep. 327 (K.B. 1770). *Id.* at 265. In *Rex v. Wilkes*, a writ of error was brought to the House of Lords protesting the imposition of consecutive sentences for libel. The consecutive sentences were affirmed by all the law lords, and the common law principle was born. *Wilkes*, 98 Eng. Rep. at 355.

The petitioner argues that the source of the authority to impose consecutive sentences is not the common law, but rather RSA chapter 607 (1955) (repealed 1973). His reliance upon RSA chapter 607 is misplaced, however, as he concedes that it did not "include a specific provision on the imposition of consecutive sentences."

 Having concluded that, absent statutory dictates to the contrary, courts have the common law authority to impose consecutive sentences, we next examine whether, when repealing former RSA 651:3, III, the legislature did not intend to restore this common law authority. "It is a general principle that the repeal of a statute which abrogates the common law operates to reinstate the common-law rule, unless it appears that the legislature did not intend such reinstatement." 73 AM. JUR. 2D *Statutes* § 271 (2d ed. 2001).

Because the repeal of a statute is at issue, we examine legislative history to analyze whether the legislature intended to reinstate the common law

authority of courts to impose consecutive sentences *See Opinion of the Justices*, 121 N.H. 429, 432 (1981). In addition, the statutory scheme remaining after the repeal of former RSA 651:3, III is subject to more than one reasonable interpretation, further necessitating review of legislative history. *See State v. Yates*, 152 N.H. 245, 255 (2005). The remaining statutory sentencing scheme, read one way, recognized the general authority of courts to impose either consecutive or concurrent sentences except in certain situations where consecutive sentences were required. Read another way, the scheme restricted judicial authority to impose consecutive sentences only to those situations where such sentences were statutorily mandated.

RSA 651:3, III was repealed pursuant to Senate Bill (SB) 144. SB 144 was introduced by Senator David H. Bradley at the request of the superior court, which unanimously recommended repeal. N.H.S. JOUR. 306 (1975). One of the superior court judges drafted the language of the bill. *Id.* At a hearing before the Senate Judiciary Committee, Judge Martin Loughlin aired the frustration of the trial judges who believed that the concurrent system was not effective in the case of habitual offenders. He testified that, "[c]oncurrent sentences are becoming a farce." SENATE COMM. ON JUDICIARY, HEARING ON SB 144 (April 23, 1975).

On the Senate floor, Senator Bradley spoke about the purpose of the repeal:

> Mr. President, this bill was requested by the Superior Court. All of the judges met on this and unanimously voted to favor this legislation and the bill was drafted by one of the judges. . . . One of the changes is to repeal a section [of the Criminal Code] with respect as to whether sentences imposed for multiple offenses would be concurrent or consecutive. Historically, it was within the discretion of the judge. Usually, they were imposed concurrently. The thinking behind the new criminal code is that you should almost always impose sentences concurrently. However, the judges have found a number of cases in which they felt that it was inappropriate where the defendant should have the sentences imposed consecutively. The judges feel that they should have the discretion to impose the sentences consecutively.

N.H.S. JOUR. 306 (1975). On May 7, 1975, the House Judiciary Committee took up the bill and once again Judge Loughlin spoke on behalf of the trial judges. HOUSE COMM. ON JUDICIARY, HEARING ON SB 144 (May 7, 1975). According to the minutes of the committee meeting, Loughlin noted that "a deterrent for the habitual offender" was needed. *Id.* That deterrent was

the restoration of the common law authority of judges to impose consecutive sentences. *See id.* This legislative history demonstrates that the legislature intended to revive the common law through this repeal. Accordingly, we conclude that the trial court did not exceed its statutory authority by imposing consecutive sentences in this case.

## II. Constitutional Arguments

### A. Due Process

The petitioner next asserts that because neither RSA 651:2 nor RSA 632-A:10-a "clearly delineate whether or under what circumstances consecutive sentences may be imposed," the imposition of such sentences violates the Federal and State Due Process Clauses. *See* U.S. CONST. amend. XIV; N.H. CONST. pt. I, art. 15. He further asserts that although RSA 651:3 addresses the calculation of sentences, it does not "clearly delineate the possibility of consecutive sentences." Thus, the petitioner argues that the statutes are "void for vagueness."

We are the final arbiter of the State Constitution's due process requirements. *See In re Baby K.*, 143 N.H. 201, 204 (1998). We first address the petitioner's claim under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), and cite federal opinions for guidance only, *id.* at 232-33.

 "It is a fundamental tenet of due process that no one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *United States v. Batchelder*, 442 U.S. 114, 123 (1979) (quotation and brackets omitted). Thus, a criminal statute is impermissibly vague if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or if it "authorizes or even encourages arbitrary and discriminatory enforcement." *State v. Porelle*, 149 N.H. 420, 423 (2003) (quotations omitted). "So too, vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." *Batchelder*, 442 U.S. at 123. "The necessary specificity, however, need not be contained in the statute itself, but rather, the statute in question may be read in the context of related statutes, prior decisions, or generally accepted usage." *Porelle*, 149 N.H. at 423 (quotation omitted). "Mathematical exactness is not required in a penal statute, nor is a law invalid merely because it could have been drafted with greater precision." *Id.* (quotation omitted). "The party challenging the statute as void for vagueness bears a heavy burden of proof in view of the strong presumption of a statute's constitutionality." *Id.* (quotation omitted).

We conclude that a person of ordinary intelligence would understand that a person guilty of multiple counts of aggravated felonious sexual assault could be subject to separate sentences for each count. RSA 632-A:10-a gives notice to a person of ordinary intelligence that "[a] person convicted of aggravated felonious sexual assault under the provisions of RSA 632-A:2 shall be sentenced to a maximum sentence which is not to exceed 20 years and a minimum which is not to exceed ½ of the maximum." Further, in *State v. Horner*, 153 N.H. 306, 310 (2006), we observed that when reviewing RSA chapter 651 as a whole, "we are confident that the word 'sentence' plainly and unambiguously denotes the punishment prescribed by a court in relation to a conviction on a single offense."

The language of RSA 632-A:10-a, RSA chapter 651 and our judicial construction of that language puts a person of ordinary intelligence on notice that a person guilty of aggravated felonious sexual assault may receive the maximum statutory sentence for each aggravated felonious sexual assault conviction. *See LaVallee v. Perrin*, 124 N.H. 33, 40 (1983). We therefore hold that the notice requirements of the Due Process Clause of the State Constitution are satisfied.

We reach the same result under the Federal Constitution because the Federal Constitution affords no greater protection than does the State Constitution with regard to whether a statute is unconstitutionally vague. *Porelle*, 149 N.H. at 423; *see Hill v. Colorado*, 530 U.S. 703, 732-33 (2000).

### B. Proportionality in Sentencing

The petitioner next contends that because there are no objective criteria pursuant to which a court may impose a consecutive sentence, "there is nothing in the statutory framework to ensure that such sentences are not arbitrarily or disproportionately imposed" in violation of Part I, Article 18 of the State Constitution. He does not argue that his own sentence was disproportionate; rather, he vaguely asserts, without support, that the lack of objective criteria "foster[s] a system of arbitrary and disproportionate sentencing decisions that essentially end run the requirements of existing sentencing statutes."

We must presume that the sentencing scheme is constitutional and we cannot declare it unconstitutional except upon inescapable grounds. *See Baines v. N.H. Senate President*, 152 N.H. 124, 133 (2005). For a sentence to violate Part I, Article 18 of the State Constitution, it must be "grossly disproportionate to the crime." *State v. Enderson*, 148 N.H. 252, 259 (2002) (quotation omitted). Here, the petitioner has failed to persuade us that the sentencing scheme is unconstitutional because it necessarily results in

sentences that are "grossly disproportionate to the crime." *Id.* (quotation omitted).

We reject the petitioner's assertion that there are no objective criteria to guide a judge's sentencing decision. The State Constitution requires the trial court to consider numerous objective factors before imposing any sentence, whether consecutive or not. Part I, Article 18 of the State Constitution requires the trial court to "consider all the relevant factors necessary to the exercise of its discretion." *Id.* (quotation omitted). These factors include whether the sentence imposed will meet the traditional goals of sentencing—punishment, deterrence and rehabilitation. *See State v. Hammond,* 144 N.H. 401, 408 (1999).

█ In light of the commands of Part I, Article 18, and as the petitioner has failed to cite any relevant authority for his assertion that for a sentencing scheme to be constitutional, objective factors must be set forth by statute to guide judicial discretion in sentencing, we conclude that the sentencing scheme does not violate the State Constitution for the reasons he posits.

### C. Separation of Powers

The petitioner next argues that the imposition of consecutive sentences violates the doctrine of separation of powers because it is the legislature that fixes the degree, extent and method of punishment, including the "extraordinary terms of imprisonment" that might result from imposing consecutive sentences. *See* N.H. CONST. pt. I, art. 37. He asserts that by imposing consecutive sentences, trial courts "impermissibly encroach[ ] on the legislature's role."

█ The separation of powers among the legislative, executive and judicial branches of the government is an important part of its constitutional fabric. *Opinion of the Justices,* 102 N.H. 195, 196 (1959). Part I, Article 37 of the State Constitution provides:

> In the government of this state, the three essential powers thereof, to wit, the legislative, executive, and judicial, ought to be kept as separate from, and independent of, each other, as the nature of a free government will admit, or as is consistent with that chain of connection that binds the whole fabric of the constitution in one indissoluble bond of union and amity.

Separation of the three co-equal branches of government is essential to protect against a seizure of control by one branch that would threaten the ability of our citizens to remain a free and sovereign people. *Petition of Governor & Executive Council,* 151 N.H. 1, 9 (2004). Thus, each branch is

prohibited by the Separation of Powers Clause from encroaching upon the powers and functions of another branch. *Id.* The drafters of Part I, Article 37 recognized, however, that a complete separation of powers would disrupt the efficient operation of government, *see Cloutier v. State Milk Control Board,* 92 N.H. 199, 203 (1942), and, thus, they did not provide for impenetrable barriers between the branches, *Opinion of the Justices,* 113 N.H. 287, 290 (1973). To the contrary, the three branches should move in concert, and the doctrine is violated only when one branch usurps an *essential* power of another. *Petition of Governor,* 151 N.H. at 9. Accordingly, we must consider whether the judiciary, by imposing consecutive sentences, is usurping an essential power of the legislature. *See id.*

"[S]entencing is an exclusively judicial function." *Bussiere v. Cunningham, Warden,* 132 N.H. 747, 755 (1990). The legislature, however, may choose to constrict the independent exercise of judicial discretion in sentencing. *See State v. Dean,* 115 N.H. 520, 523 (1975). For instance, "the exercise of the judicial privilege of suspension can be withdrawn by statutory language expressing a clear legislative intent that a sentence is to be mandatorily imposed." *Id.* Similarly, "the legislature may circumscribe the court's power to suspend [a sentence] to a greater or lesser degree, provided that the sentencing process as a whole complies with the requirements of due process and with other constitutional constraints." *Petition of State of N.H. (State v. Fischer),* 152 N.H. 205, 211 (2005).

In this case, the legislature has not acted to circumscribe the trial courts' power to impose consecutive sentences; indeed, it had earlier done so, but repealed that statute. Therefore, the trial courts retain the common law authority to impose such sentences. Because no usurpation of essential legislative functions has been effectuated, the separation of powers doctrine has not been violated.

*Affirmed.*

BRODERICK, C.J., and GALWAY and HICKS, JJ., concurred.