985 A.2d 955

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Craig Scott JAROWECKI, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 7, 2008.

Decided Dec. 30, 2009.

Lara Christine Glenn Hoffert, Sodomsky & Nigrini, for Craig Scott Jarowecki.

John T. Adams, Alisa Rebecca Hobart, Berks County District Attorney's Office, Reading, for Commonwealth of Pennsylvania.

Karl Baker, Peter Rosalsky, Defender Association of Philadelphia, Philadelphia, for Amicus Curiae Defender Association of Philadelphia.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

### OPINION

Justice TODD.

In this appeal, we address the proper grading of Appellant Craig Scott Jarowecki's eight convictions for possession of child pornography under 18 Pa.C.S.A. § 6312(d)(2). For the reasons that follow, while Jarowecki's convictions remain undisturbed, we conclude the trial court erred in deeming his convictions at counts 2 through 8 of the multiple count complaint to be "second offenses" under that statute, and thus erred in grading those convictions as second-degree, rather than third-degree, felonies. Accordingly, we reverse and remand.

In January 2005, internet service provider America Online ("AOL") contacted law enforcement personnel in Berks County to report that one of its subscribers, Jarowecki, had sent an email message to another subscriber containing child pornography. Based on this information, police secured a search warrant for Jarowecki's home, which they executed on January 20, 2005. When told that police were looking for child pornography, Jarowecki, an employee of the Children's Hospital of Philadelphia, claimed that he had contacted AOL himself to report that he had received a video showing an adult engaged in a sexual act with an infant. Pursuant to the search warrant, police seized two computers from Jarowecki's residence, as well as hundreds of VHS tapes and dozens of floppy and CD–ROM disks. Police discovered thousands of pornographic images and movies on the disks, eight of which it was determined depicted child pornography.[1] Jarowecki was charged with eight counts [2] of possession of child pornography in violation of 18 Pa.C.S.A. § 6312, which then provided, *inter alia*, that "[a]ny person who knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act

---

1. Six were images, and two were movies.

2. Jarowecki initially was charged with ten counts of violating 18 Pa. C.S.A. § 6312. Two counts, under subsection (b), were dismissed prior to trial.

or in the simulation of such act commits an offense." *Id.* § 6312(d)(1).[3]

At trial, Jarowecki stipulated that a Commonwealth expert, a pediatrician, would have testified that all of the children depicted in the eight images were under the age of 18 and that some were under the age of 15. The Commonwealth also offered the testimony of the detectives assigned to the case, both of whom explained the search of Jarowecki's residence and described the items seized there. Jarowecki admitted to police that he viewed child pornography a few hundred times in the previous years.

Jarowecki testified at trial that the images at issue came to him through his participation in various internet groups that shared adult pornography among their members. Jarowecki stated that he regularly downloaded hundreds of images he believed to be adult pornography. According to Jarowecki, he programmed his computer to perform these downloads automatically. He claimed that he did not choose which images to save to the disks, but instead retained all the images he received from his participation within the various groups. On cross-examination, Jarowecki admitted that he had created a subfolder system in order to store his pornography collection.[4] He also claimed that the only time he sent child pornography from his account was in an email he sent to AOL to report his prior receipt of child pornography.

AOL's director of investigations testified on rebuttal. He contradicted Jarowecki's testimony, telling the jury that AOL had not received a report from Jarowecki alerting AOL to his receipt of child pornography. Further, the director testified that AOL became aware of Jarowecki's possession of child pornography because Jarowecki sent a pornographic image from his AOL account.[5] To do so, explained the director,

3. *See infra* note 9.

4. The images at issue depicted children engaged in a variety of sexual acts with adults and other children. The images were discovered in several different subfolders, some of which had general names ("untitled folder 2") and others that were more specific ("Cjsxxx Ladies," "Incest Pics" and "YoungGir"). N.T., 3/30/06, at 221–32.

5. The witness explained that AOL has a program that detects child pornography. N.T., 3/30/06, at 432. The system alerts only to accounts

Jarowecki created a new email and embedded the image into the body of the email.

The jury returned guilty verdicts on all eight counts.[6] At the sentencing hearing on July 3, 2006, the Commonwealth moved to grade counts 2 through 8 as second-degree felonies—"second offense[s]"—pursuant to 18 Pa.C.S.A. § 6312(d)(2), which provided that "[a] first offense under this subsection is a felony of the third degree, and a second or subsequent offense under this subsection is a felony of the second degree." The trial court rejected Jarowecki's contention that convictions within a multiple count complaint cannot serve as a sentencing enhancement for another conviction in the same complaint, relying on *Commonwealth v. Vasquez*, 562 Pa. 120, 125–27, 753 A.2d 807, 810 (2000) (holding that the phrase, "if at the time of sentencing the defendant has been convicted of another drug trafficking offence," contained in 18 Pa.C.S.A. § 7508(a)(3)(i), allowed for a conviction within a multiple count complaint to serve as a sentencing enhancement for another conviction contained with the same complaint). Thus, the trial court graded the conviction for count 1—the "first offense"—as a third-degree felony, and the convictions for counts 2 through 8—the "second offense[s]"—as second-degree felonies. It then imposed an aggregate sentence of 37 to 204 months imprisonment followed by 20 years of probation.[7]

from which pornographic images are sent, not those that receive such images. *Id.* at 435. This is so, the witness explained, because a sender must affirmatively act to create an email and embed an image, while a receiver has no control over what is sent to his account. *Id.* at 435–36.

6: Appellant was not present for the final day of trial or the announcement of the verdict, as he fled to Canada after testifying. He was pronounced guilty in absentia, but later was apprehended and returned to the jurisdiction for his sentencing hearing.

7. On count 1, the court imposed the maximum sentence—12 to 84 months in prison—to be served consecutively to counts 2, 3, and 4. *See* 18 Pa.C.S.A. § 1103 (maximum sentence for third-degree felony is seven years). On counts 2, 3, and 4, the court imposed three maximum terms of prison—25 months to 120 months—but ordered each to run concurrently with the other. *See id.* (maximum sentence for second-degree felony is ten years). On counts 5, 6, 7, and 8 combined, the court imposed two additional 10–year terms of special probation.

In his direct appeal to the Superior Court, Jarowecki claimed that the trial court's application of Section 6312(d)(2) was improper and resulted in an illegal sentence. Jarowecki maintained that the grading increase for a "second or subsequent offense" did "not allow for a conviction within a multiple count complaint to serve as a grading enhancement for another conviction contained within the same complaint," *Commonwealth v. Jarowecki*, 923 A.2d 425, 428 (Pa.Super.2007), and contended that the trial court's reliance on *Vasquez, supra,* was misplaced. Reviewing *Vasquez*, and this Court's subsequent decisions in *Commonwealth v. Shiffler*, 583 Pa. 478, 879 A.2d 185 (2005), and *Commonwealth v. McClintic*, 589 Pa. 465, 472, 909 A.2d 1241, 1245 (2006), the Superior Court rejected Jarowecki's arguments and affirmed the judgment of sentence. The panel, in a published opinion by Judge Patrick R. Tamilia, held that, under Section 6312(d)(2), "one conviction in a multiple count complaint can serve as a 'second or subsequent offense' for purposes of enhancing the grade of another conviction contained within the same complaint." [8] *Jarowecki*, 923 A.2d at 429. In a concurring and dissenting statement, Judge John T. Bender disagreed that the grading enhancement applied, and would have remanded the matter for resentencing without the enhancement.

This Court granted review to address whether the grading of Jarowecki's convictions was proper; specifically, we accepted review on the following question: "Whether the grading of the child pornography convictions at Counts 2 through 8 in a multiple counts complaint can be enhanced as a result of a child pornography conviction on Count 1?" *Commonwealth v. Jarowecki*, 596 Pa. 586, 947 A.2d 713, 714 (2008) (order). As this issue is one of statutory interpretation to determine the lawfulness of the sentence imposed, it is a pure question of law, and thus our standard of review is de novo. *McClintic*, 589 Pa. at 472, 909 A.2d at 1245. When interpreting a statute, we are guided by the Statutory Construction Act, which states that our task is to effectuate the intent of the

---

8. The Superior Court panel resolved a number of other issues on appeal, none of which is relevant herein.

legislature. *See* 1 Pa.C.S.A. § 1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions."). In doing so, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). We construe statutory language according to its "common and approved usage," unless particular words and phrases have "acquired a 'peculiar and appropriate meaning.'" *McClintic*, 589 Pa. at 472, 909 A.2d at 1245 (quoting 1 Pa.C.S.A. § 1903(a)). However, penal statutes are to be strictly construed, 1 Pa.C.S.A. § 1928(b)(1), and thus any ambiguity must be interpreted in favor of the defendant, *Commonwealth v. Bullock*, 590 Pa. 480, 488, 913 A.2d 207, 212 (2006).

■ Before turning to the parties' arguments on appeal, we quote the text of the relevant statute. Section 6312 provided:

### § 6312. Sexual abuse of children

(a) **Definition.**—As used in this section, "prohibited sexual act" means sexual intercourse as defined in section 3101 (relating to definitions), masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction.

(b) **Photographing, videotaping, depicting on computer or filming sexual acts.**—Any person who causes or knowingly permits a child under the age of 18 years to engage in a prohibited sexual act or in the simulation of such act is guilty of a felony of the second degree if such person knows, has reason to know or intends that such act may be photographed, videotaped, depicted on computer or filmed. Any person who knowingly photographs, videotapes, depicts on computer or films a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such an act is guilty of a felony of the second degree.

**(c) Dissemination of photographs, videotapes, computer depictions and films.—**

(1) Any person who knowingly sells, distributes, delivers, disseminates, transfers, displays or exhibits to others, or who possesses for the purpose of sale, distribution, delivery, dissemination, transfer, display or exhibition to others, any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.

(2) A first offense under this subsection is a felony of the third degree, and a second or subsequent offense under this subsection is a felony of the second degree.

**(d) Possession of child pornography.—**

(1) Any person who knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.

(2) A first offense under this subsection is a felony of the third degree, and a second or subsequent offense under this subsection is a felony of the second degree.

**(e) Evidence of age.—**In the event a person involved in a prohibited sexual act is alleged to be a child under the age of 18 years, competent expert testimony shall be sufficient to establish the age of said person.

**(e.1) Mistake as to age.—**Under subsection (b) only, it is no defense that the defendant did not know the age of the child. Neither a misrepresentation of age by the child nor a bona fide belief that the person is over the specified age shall be a defense.

**(f) Exceptions.—**This section does not apply to any material that is possessed, controlled, brought or caused to be

brought into this Commonwealth, or presented for a bona fide educational, scientific, governmental or judicial purpose. 18 Pa.C.S.A. § 6312 (2008).[9]

At issue here is the grading of a violation under subsection (d), which provided that a "first offense" of possession of child pornography is a third-degree felony and a "second or subsequent offense" is a second-degree felony. Appellant contends that, because he was convicted of all 8 counts of violating Section 6312(d) at the same time [10] and, thus, was not convicted of count 1 before committing the offenses underlying counts 2 through 8, all of his offenses were "first" offenses under the statute—that is, counts 2 through 8 cannot count as "second" or "subsequent" offenses. Instead, Jarowecki argues Section 6312 reflects a "recidivist philosophy," and as such should be interpreted to require that the offenses not only be separate in time, but also sequential in terms of conviction and punishment. Brief for Appellant at 9 ("Under the 'second or subsequent' language . . . it is not merely enough that Appellant acquired the images at various times; Appellant must have been convicted under § 6312 *prior to* collecting the batch of images for which he was convicted of in this present matter." (emphasis added)). Accordingly, he asserts he was illegally sentenced on counts 2 through 8 as a second/subsequent offender.

9. This is the version of the statute in force at the time of Jarowecki's offenses. It was amended effective September 14, 2009 to, *inter alia*, add "intentionally views" to the proscribed activity in subsection (d)(1). *See* 18 Pa.C.S.A. § 6312(d)(1) (2009) ("Any person who intentionally views or knowingly possesses or controls" child pornography commits an offense.) However, the recent amendments did not alter subsection (d)(2) which is at issue herein. We further note that the statute was previously amended in 2002. Prior to the 2002 amendment, all offenses under subsection (d) were graded as felonies of the third degree.

10. Jarowecki does not assert that the eight offenses of which he was convicted occurred as part of a single criminal episode. Indeed, the evidence at trial established that Jarowecki's acquisition of the child pornography took place over a period of many months, perhaps years. In *Commonwealth v. Davidson*, 595 Pa. 1, 938 A.2d 198 (2007), this Court held that "each image of child pornography possessed by an individual [is] a separate, independent crime" under Section 6312. *Id.* at 36, 938 A.2d at 219.

Jarowecki further contends the trial court's reliance on *Vasquez* was in error. He asserts that the legislative intent of Section 6312 is "more in keeping" with the legislative intent of Section 9714, the three-strikes sentencing provision this Court analyzed in *Shiffler, supra,* and *McClintic, supra.* Brief for Appellant at 9.

By contrast, the Commonwealth asserts that *Vasquez* is controlling. It notes that, unlike "traditional recidivist" statutes, "no time period of sequence of events is contained" in Section 6312. Brief for Commonwealth at 10. The Commonwealth contends that, under the plain language of the statute, enhancement under Section 6312 requires "only a prior offense" and, as "the defendant came to sentencing with convictions for multiple offenses of possession of child pornography," counts 2 through 8 must be considered second offenses. Brief for Commonwealth at 11. It argues that the legislature could have, but did not, adopt language like that in 42 Pa.C.S.A. § 9714, which it concedes clearly reflects a recidivist character. *Id.* at 12 (citing 42 Pa.C.S.A. § 9714(a)(1) (imposing enhanced sentence "if at the time of the commission of the current offense the person had previously been convicted of a crime of violence")). Finally, the Commonwealth asserts that it makes practical sense to ascribe a greater penalty for the second and subsequent possession of child pornography, contending that, with the plain language of the statute, the legislature intended to prevent a "volume discount on crime." Brief for Commonwealth at 13 (quoting *Commonwealth v. Davidson,* 860 A.2d 575, 583 (Pa.Super.2004)).

 The courts of this Commonwealth have repeatedly recognized that the general purpose of graduated sentencing laws "is to punish more severely offenders who have persevered in criminal activity despite the theoretically beneficial effects of penal discipline." *Shiffler,* 583 Pa. at 494, 879 A.2d at 195 (quoting *Commonwealth v. Dickerson,* 533 Pa. 294, 299, 621 A.2d 990, 992 (1993)) (emphasis omitted). Stated another way, the purpose of such laws is to enhance punishment "when the defendant has exhibited an unwillingness to reform his miscreant ways and to conform his life according to the law."

*Shiffler*, 583 Pa. at 494, 879 A.2d at 195. Accordingly, "[f]ollowing the recidivist logic, each strike that serves as a predicate offense must be followed by sentencing and, by necessary implication, an opportunity for reform, before the offender commits the next strike." *McClintic*, 589 Pa. at 483, 909 A.2d at 1252.[11] However, "[t]he recidivist philosophy, while a valid policy, is not the only valid sentencing policy, nor is it a constitutional principle or mandate," and the legislature is free to enact a statute "which clearly expresses a different application." *Shiffler*, 583 Pa. at 496, 879 A.2d at 196 (quoting *Commonwealth v. Bradley*, 575 Pa. 141, 155, 834 A.2d 1127, 1135 (2003)).

Initially, we note that the decisions relied on in large measure by the courts below and the parties herein—*Vasquez, Shiffler*, and *McClintic*—address statutory language insufficiently analogous to Section 6312 to provide much guidance. In *Vasquez*, this Court addressed language in the drug trafficking sentencing statute, 18 Pa.C.S.A. § 7508, which provided that, "[i]f at the time of sentencing the defendant has been convicted of another drug trafficking offence," the defendant was subject to an enhanced sentence. *Vasquez*, 562 Pa. at 122, 753 A.2d at 808 (quoting 18 Pa.C.S.A. § 7508(a)(3)(i)). There, the defendant was charged in a single criminal infor-

11. As one commentator has observed:

The prevalent view is that enhanced punishment cannot be imposed unless all of the defendant's prior convictions preceded commission of the principal offense, and each prior offense and conviction occurred in chronological sequence. Thus, each offense, following the first, must have been committed after the defendant's conviction of the immediately preceding offense. Courts adopting this view have reasoned that habitual offender statutes are intended to warn the potential career criminal of the consequences of persistent criminal activity, and to give the offender an opportunity to reform through exposure to the restraining influences of conviction and punishment before the more severe punishment of an habitual offender statute is imposed. The offender is deemed incorrigible not so much because he or she has sinned more than once, but because the offender has demonstrated, through persistent criminal behavior, that he or she is not susceptible to the reforming influence of the conviction process.
Cynthia L. Sletto, Annotation, *Chronological or Procedural Sequence of Former Convictions as Affecting Enhancement of Penalty Under Habitual Offender Statutes*, 7 A.L.R.5th 263, § 2[a] (1992) (footnote omitted), *quoted in Shiffler*, 583 Pa. at 494–95, 879 A.2d at 195.

mation with numerous counts of cocaine delivery. He pled guilty to two of the counts, each occurring on a different date. The trial court imposed a sentence on one count pursuant to the mandatory minimum penalties set out in 18 Pa.C.S.A. § 7508(a)(3)(i), and imposed a sentence enhancement on the second count.

On appeal, we rejected the appellant's claim that the statute did not authorize one of the counts in his multiple count complaint to constitute a conviction for "another" drug trafficking offense. We concluded that the plain language of Section 7508 directed the sentencing court to determine whether, "at the time of sentencing," the defendant had been convicted of another drug trafficking offense, not, as the defendant contended, "at the time of committing the offense" for which he was being sentenced. *Vasquez*, 562 Pa. at 123–24, 753 A.2d at 809; *see id.* at 126–27, 753 A.2d at 811 ("No where in the unambiguous language of Section 7508 does the statute require an analysis of when the convictions occurred or whether an intervening arrest occurred between the commission of these drug offenses.").

In *Shiffler*, we addressed the three-strikes statute, 42 Pa. C.S.A. § 9714, which provides for an enhanced sentence "[w]here the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions." 42 Pa.C.S.A. § 9714(a)(2).[12] There, the defendant

12. Section 9714 provides in relevant part:
§ 9714. **Sentences for second and subsequent offenses**
(a) **Mandatory sentence.**—
(1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon a second conviction for a crime of violence, the court shall give the person oral and written notice of the penalties under this section for a third conviction for a crime of violence. Failure to provide such notice shall not render the offender ineligible to be sentenced under paragraph (2).
(2) Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes

pled guilty to three separate burglaries committed in 1996 and 1997, and was sentenced on all three that same day. In 2001, he committed another burglary. At sentencing on that conviction, the Commonwealth argued that he was a third-time offender under the three strikes law, whereas the defendant maintained that he was a second-time offender because he had been convicted and sentenced for all of his prior offenses in a single proceeding.

On appeal, this Court concluded that the language of Section 9714(a)(2) "seem[ed] to apply" to the defendant's circumstances, recognizing that it provided for an enhanced sentence for "those defendants who 'at the time of the commission of' their current offense had been 'previously convicted' of two or more crimes of violence." *Shiffler*, 583 Pa. at 491–92, 879 A.2d at 193. Nevertheless, we found this language ambiguous when considered within the operation of the statute as a whole. We noted that Section 9714 reflected a graduated, recidivist structure, and concluded that, if the Commonwealth's interpretation prevailed, the defendant would be deemed to be a third-time offender despite the fact no court had deemed him to be a second-time offender, an absurd result we concluded the legislature could not have intended. *Shiffler*, 583 Pa. at 493, 879 A.2d at 194–95 ("We see nothing in the carefully graduated structure of Section 9714 to suggest that the General Assembly intended to require a sentencing court to simply skip a defendant's second strike and proceed to 'call him out' by applying three strikes."). We further noted that the statute was "extraordinary" in that it authorized reconsideration of an enhanced sentence in the event that a previous conviction was later vacated, concluding that such a

of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required. Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.
42 Pa.C.S.A. § 9714(a).

provision "clearly reflect[ed] a recidivist philosophy approach." *Id.* at 496, 879 A.2d at 196. We found our holding consistent with the "rule of lenity"—the mandate that ambiguous penal statutes be interpreted in favor of the criminal defendant. *Id.* at 493, 879 A.2d at 194–95 (citing *Bradley,* 834 A.2d at 1136 (Saylor, J., concurring)).

This Court again considered the language of Section 9714 in *McClintic,* although, at that time, we addressed whether the statute provided for multiple enhancements for each crime of violence the defendant committed in one criminal episode, focusing on the meaning of the phrase "current offense" in 42 Pa.C.S.A. § 9714(a)(2) ("[w]here the person had at the time of the commission of the *current offense* previously been convicted of two or more such crimes of violence arising from separate criminal transactions" (emphasis added)). In *McClintic,* the defendant was convicted of burglary and robbery for a single criminal episode, and received an enhanced sentence under Section 9714(a)(2) for each of these convictions, based upon a prior offense.

On appeal, in making his claim that the multiple enhancements were unlawful, the defendant asserted that the phrase "current offense," as used in Section 9714(a)(2), was ambiguous. While we rejected this contention, *id.* at 480, 909 A.2d at 1250 (concluding that "current offense" was plainly defined in the statute as "the crime of violence for which the defendant is currently being sentenced"), we nonetheless reasoned that the legislature intended to limit the enhancement to a single application for a single criminal transaction, "rather than [multiple enhancements] for each individual crime within such transaction." *Id.* at 481, 909 A.2d at 1251. As in *Shiffler,* we observed that, given the statute's recidivist structure, applying multiple enhancements to a single criminal transaction led to absurd results: "It would be absurd to hold that Appellant can now be sentenced as a third and fourth-time offender, and then, upon commission of a fifth offense in the future, be sentenced as a fourth-time offender." *Id.* at 481–82, 909 A.2d at 1251.

As this review illustrates, in *Vasquez, Shiffler,* and *McClintic,* this Court addressed more nuanced and more complex statutory language than that presented in the instant case in Section 6312(d). As a result, we conclude these decisions provide limited guidance in interpreting the stark language in Section 6312(d).[13]

Rather, at issue here is the legislature's simple dictate under Section 6312(d) that any person who possesses child pornography "commits an offense", for which a "first offense" is a third-degree felony, and a "second or subsequent offense" is a second-degree felony. 18 Pa.C.S.A. § 6312(d). With respect to this specific offense language, the caselaw of this Commonwealth has long held references in our criminal law to a "second offense" or "subsequent offense" to be indicative of a recidivist philosophy.

In *Commonwealth v. Vogel,* 440 Pa. 1, 268 A.2d 89 (1970), this Court addressed nearly identically-styled "offense" language.[14] Therein, the defendant was found guilty of robbery and two counts of second-degree murder for killings committed during the robbery. The jury rejected the defendant's insanity defense, and, pursuant to the sentencing statute recited below, sentenced him to life imprisonment on the second murder. The defendant appealed, challenging both the jury instructions regarding the burdens of proving sanity, and his life sentence for the second murder.

At the time of his crime, the murder statute provided:

Whoever is convicted of the crime of murder of the second degree is guilty of a felony, and shall, for the first offense,

13. Our recent decision in *Commonwealth v. Haag,* 981 A.2d 902 (2009), addressed similarly distinct statutory language. There, we interpreted the driving under the influence ("DUI") statute which provides, in relevant part, that a "prior offense" includes "any conviction ... within the ten years before the present violation occurred." 75 Pa.C.S.A. § 3806(b). In *Haag,* the defendant had been arrested for DUI, released, then arrested again for DUI 1 ½ hours later; we determined that, at his sentencing on the two offenses, his first violation was not a "prior offense" vis-à-vis the second offense because he had not been *convicted* of the first offense prior to (within 10 years of) his second violation.

14. As discussed below, although the Court issued fragmented opinions, on the salient point at issue herein, four Justices agreed.

be sentenced to undergo imprisonment by separate or solitary confinement not exceeding twenty (20) years, or fined not exceeding ten thousand dollars, or both, and for the second offense, shall undergo imprisonment for the period of his natural life.

*Id.* at 7–8, 268 A.2d at 93 (Opinion in Support of the Order by Jones, J.) (quoting 18 P.S. § 4701 (repealed)) (emphasis omitted). Although the Court split over the issue of the burdens of proof regarding the defendant's insanity defense, a majority of the Court agreed that, given the text of the murder statute, the defendant was improperly sentenced as a second offender—and sentenced to life imprisonment—on the second murder.[15] In the lead opinion authored by Justice Jones (and joined by Justice O'Brien), Justice Jones opined:

As employed in this statute, the term "second offense" means a subsequent murder, a murder which was committed after a conviction for a prior murder, and which was not part of the same transaction or occurrence which led to the first murder. *Cf. Commonwealth v. Swingle,* 403 Pa. 293, 169 A.2d 871, cert. denied, 368 U.S. 862, 82 S.Ct. 107, 7 L.Ed.2d 59 (1961). In order to increase the punishment for a second offense of second-degree murder, a prior conviction for murder must precede the commission of the second murder. The sentence of life imprisonment which was imposed by the trial court, on the second count of murder, was incorrect.

*Id.* at 8, 268 A.2d at 93 (Opinion in Support of the Order by Jones, J.). Although dissenting to the Court's order granting the defendant a new trial on the insanity issue, Chief Justice Bell (joined by Justice Eagen) similarly concluded that the defendant's life sentence on the second murder was improper:

In my opinion, the term "second offense" means a subsequent murder which was committed after a conviction of a prior murder. *Cf. Commonwealth ex rel. Swingle v. Ban-*

15. By per curiam order, the Court reversed his judgment of sentence and granted Vogel a new trial on his insanity claim. The Court's reasoning on the insanity issue was later disapproved in *Commonwealth v. Demmitt,* 456 Pa. 475, 321 A.2d 627 (1974).

*miller,* 398 Pa. 43, 156 A.2d 520; *Commonwealth v. Swingle,* 403 Pa. 293, 169 A.2d 871. Therefore, in order to increase the punishment for a *second offense* of murder (of the second degree), a prior conviction must precede the commission of the second murder.

*Id.* at 33, 268 A.2d at 102 (Bell, C.J., dissenting) (emphasis original).

The critical language at issue in Section 6312(d) is, in relevant part, identical to the language at issue in *Vogel:* in each case the focus is on the commission of a "first offense" or "second [or subsequent] offense." On the force of *Vogel* alone, arguably Jarowecki is entitled to relief. Nevertheless, we note that our Court's decision in *Vogel* is supported by long-standing caselaw.

In *Commonwealth v. McDermott,* 224 Pa. 363, 73 A. 427 (1909), this Court addressed the Act of 1901 which, *inter alia,* prohibited the sale of colored oleomargarine. The act provided that any person "who violates any of the provisions of this act shall also be guilty of a misdemeanor; and upon conviction thereof shall be punished for the first offence by a fine . . . or by imprisonment in the county jail for not more than three months"; further, "upon conviction of any subsequent offence" the violator was subject to a fine and imprisonment for six months. Act of May 29, 1901, P.L. 327, § 7 (repealed). Therein, the defendant was convicted of violating the act, but, before he was sentenced on that first violation, violated the act a second time. At his sentencing following his conviction for the second violation, he was sentenced as a subsequent offender under the act.

This Court held that the defendant's enlarged sentence, as a second offender, was illegal, as the statute required a prior *conviction* before the second offense in order to deem a defendant a second offender and sentence him more severely:

The severer penalty is imposed by the Legislature because that imposed for the first offense was ineffectual. The second offense, carrying with it severer penalties, is therefore not committed in law until there has been judgment for

the first. "When a statute makes a second offense felony, or subject to a greater punishment than the first, it is always implied that such second offense ought to be committed after a conviction for the first; for the gentler method shall first be tried, which, perhaps, may prove effectual." Hawkins' Pleas of the Crown, c. 40, § 3. "Clearly the substantive offense, which draws to itself the greater punishment, is the unlawful sale after a former conviction. This, therefore, is the very offense he is called upon to defend against. He cannot complain if, after suffering a former conviction and sentence, he commits a second offense of the same kind." *Rauch v. Com.,* 78 Pa. 490 [ (1875) ].

*McDermott,* 224 Pa. at 366, 73 A. at 428. The Court concluded: "Unless at that time it had been judicially determined that he had sinned once before, he was not guilty of a second offense." *Id.* at 367, 73 A. at 428.

In *Commonwealth v. Calio,* 155 Pa.Super. 355, 38 A.2d 351 (1944), the Superior Court addressed the violation of an ice cream purity act which provided that any person violating the act was, upon conviction for "the first or second offense," guilty of a summary offense, and, "for a third or subsequent offense," guilty of a misdemeanor. The court found that the defendant, who had a prior conviction and was then found guilty at one proceeding of two additional violations of the act, could not be sentenced as a misdemeanant for his third violation:

Superficially considered, the words of the statute might conceivably support the meaning ascribed to them by the court below which held: "If it is a third offense in fact it is immaterial when the previous convictions were had." But the "object to be attained" is the authentic password to the true meaning of "the words of a law". Statutory Construction Act of May 28, 1937, P.L. 1019, § 51(4), 46 P.S. § 551(4). We think that it is clear that the purpose of a legislative provision increasing the severity of punishment for repeated offenders is to allow convicted persons an opportunity for reform, but to temper the leniency with a

promise of sterner treatment in the event that the milder forms of reproof are not successful. Interpreting the statute consonantly with this purpose, we are required to hold that the heavier penalties shall be imposed only upon those who persist in violating the statute after two convictions have been obtained. This appellant had not been twice convicted before he made the sale for which he was indicted. . . .

*Calio,* 38 A.2d at 352–53.

More recently, in *Commonwealth v. Kane,* 430 Pa.Super. 203, 633 A.2d 1210 (1993), an en banc panel of the Superior Court addressed a drug violation under 18 Pa.C.S.A. § 7508(a)(3)(i), which at that time provided for a fine and one year in prison for a "first conviction" and "upon conviction for another offense subject to sentencing under this section: three years in prison and $10,000.00." *Id.* at 205, 633 A.2d at 1210–11 (quoting 18 Pa.C.S.A. § 7508(a)(3)(i)) (internal quotation marks and emphasis omitted). Given the timing of his prosecution for two offenses, the defendant therein was sentenced on his second offense before being convicted of his first offense, and the trial court imposed the enlarged penalty at the sentencing on the second offense. Reversing, the Superior Court held:

Consistent with the theory underlying the principle of recidivist penalties, the rules of statutory construction and the pronouncements in this Commonwealth, we conclude that in order to apply recidivist or enhancement provisions for sentencing purposes under the statute in question, a defendant must be convicted of the prior offense before the commission of the subsequent offense.

*Id.* at 208, 633 A.2d at 1212; *see also Commonwealth v. Jones,* 432 Pa.Super. 97, 637 A.2d 1001, 1006–07 (1994) (en banc) (coming to same conclusion under substantially the same language in the then-prevailing version of 18 Pa.C.S.A. § 7508(a)(3)(i)).

Thus, there is substantial precedent from this Commonwealth concluding that the unadorned offense language at

issue herein indicates a recidivist philosophy. Indeed, aside from the decision of the Superior Court below, we have discovered only one other decision of this Commonwealth which, in addressing language such as that at issue herein, comes to a contrary conclusion. In *Commonwealth v. Alexander*, 811 A.2d 1064 (Pa.Super.2002), the defendant pled guilty to violating 75 Pa.C.S.A. § 3731(d), the now-repealed version of the driving under the influence ("DUI") statute, and the Superior Court affirmed sentencing the defendant as a third offender, even though he pled guilty to his second and third offenses at the same hearing. As with the statute at issue herein, the DUI statute provided an enlarged penalty for "a person convicted of a third or subsequent offense." *Id.* at 1067 (quoting 75 Pa.C.S.A. § 3731(e)(1)).[16] Notably, however, neither the court in *Alexander*, nor the Superior Court panel below in the instant case, mention, or attempt to distinguish, *McDermott, Vogel,* or the Superior Court's own contradictory decisions in *Calio* and *Kane*.[17]

Furthermore, the United States Supreme Court's decision in *Deal v. United States*, 508 U.S. 129, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993), cited by Jarowecki, supports our interpre-

---

**16.** *See also Commonwealth v. McGough*, 257 Pa.Super. 236, 390 A.2d 800 (1978) (plurality) (en banc court equally divided over whether enhanced sentence for "each subsequent offense" applied to drug prescription forger who pled guilty to two separate transactions at same proceeding).

**17.** At least prior to the passage of the Crimes Code in 1972, which abolished common law crimes, as a prerequisite to sentencing under a recidivist statute, any prior convictions had to be pled in the indictment. *See generally Commonwealth v. Reagan*, 348 Pa.Super. 589, 502 A.2d 702, 705 (1985) (en banc) (citing cases); *Commonwealth v. Aponte*, 579 Pa. 246, 257–60, 855 A.2d 800, 807–09 (2004) (explaining that common law treated recidivism as an element of the crime only due to the determinate sentencing scheme prevailing in the early days of the Commonwealth; concluding that such historical approach should not now be understood as reflecting a precept that a prior conviction is an offense element). This Court, as recently as 1970, required prior convictions under a statute with a recidivist structure like Section 6312(d) to be pled in the indictment in order to expose a defendant to an enlarged recidivist sentence. *See Commonwealth v. Moses*, 441 Pa. 145, 271 A.2d 339 (1970) (vacating sentence under liquor code statute increasing sentence for any "subsequent offense" where the indictment did not contain averments of prior convictions).

tation of Section 6312(d), and suggests that federal caselaw is in accord with the *McDermott–Vogel* line of cases. Therein, the high Court was asked to assess the recidivist nature of a firearm statute for a defendant who had committed six separate robberies, but was found guilty of all six in a single proceeding. The statutory provision stated: "In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years." *Id.* at 130, 113 S.Ct. 1993 (quoting 18 U.S.C. § 924(c)(1)). In concluding that the statute's use of the phrase "subsequent conviction" clearly triggered the sentencing enhancement for the defendant's second through sixth robberies, the Court's majority disputed the dissent's reliance on *Gonzalez v. United States,* 224 F.2d 431 (1st Cir.1955), to reach the contrary result:

> [*Gonzalez* ] says, as the dissent points out, that federal courts have "uniformly" held it to be the rule that a second offense can occur only after conviction for the first. [*Gonzalez*, 224 F.2d at 434.] But those holdings were not arrived at in disregard of the statutory text. To the contrary, as *Gonzalez* goes on to explain:
>
> > " 'It cannot legally be known that an offense has been committed until there has been a conviction. A second offense, as used in the criminal statutes, is one that has been committed after conviction for a first offense.' " *Ibid.*
>
> (quoting *Holst v. Owens,* 24 F.2d 100, 101 (C.A.5 1928)). The present statute, however, does not use the term "offense," so it cannot possibly be said that it requires a criminal act after the first conviction. What it requires is a *conviction* after the first conviction. There is utterly no ambiguity in that, and hence no occasion to invoke the rule of lenity.

*Id.* at 135–36, 113 S.Ct. 1993 (emphasis original). Critically, the statute in the instant case, unlike the statute at issue in *Deal,* uses the term "offense," grading a violation of Section 6312(d) on the commission of a "first offense" or a "second or subsequent offense." Thus, the distinction relied on by *Deal's* majority sheds further light on the instant case and, it seems,

proves Jarowecki's argument: "A second offense, as used in the criminal statutes, is one that has been committed after conviction for a first offense." *Id.* at 135–36, 113 S.Ct. 1993 (quoting *Gonzalez* ); *see also* Black's Law Dictionary 1112 (8th ed.2004) (defining "second offense" as "[a]n offense committed after conviction for a first offense"); *In re Torres,* 177 Vt. 507, 861 A.2d 1055, 1059 (2004) ("[T]he uniform rule has long been that the term "offense" assumes a prior conviction. As the Supreme Court held in *Deal,* '[i]t cannot legally be known that an offense has been committed until there has been a conviction.' " (internal quotation marks and citations omitted)); *In re Petition of State of New Hampshire,* 152 N.H. 185, 872 A.2d 1000, 1005 (2005) ("Under the *Deal* interpretation, rehabilitation and recidivism are implicated by the use of the word 'offense.' ").

Possession of child pornography is abominate and a serious crime. We do not question the legislature's policy determination that acts like those of which Jarowecki was convicted merit the condemnation of society and more severe punishment for repeated convictions. Nevertheless, we are duty bound only to interpret and apply the criminal statutes— strictly—and, in so doing, we must apply precedent in a coherent and consistent fashion. Here, the legislature has seen fit to draft a statute that, by its terms, and when viewed in light of long-standing caselaw from this Commonwealth, is reflective of a recidivist philosophy. Accordingly, we conclude the legislature did not intend to authorize a sentence enhancement under Section 6312(d)(2) for Jarowecki's convictions on counts 2 through 8 based on his simultaneous conviction at count 1. Therefore, while we do not disturb Jarowecki's convictions, we must reverse his judgment of sentence and remand for resentencing.

Judgment of sentence reversed. Case remanded for resentencing.

Chief Justice CASTILLE, Justice SAYLOR, BAER and McCAFFERY and Justice GREENSPAN join the opinion.

Justice EAKIN files a concurring opinion.

Justice EAKIN, concurring.

I concur with the majority, but write separately to express concerns about the continued recognition of the alleged "recidivist philosophy," which in my view defers attention from the proper canons of statutory construction.

As the majority states, our objective is to effectuate legislative intent, which is most appropriately found in the plain language of the statute itself. It is the legislature's prerogative to afford harsher punishments for multiple offenses, including those occurring after commission, but prior to conviction. However, absent clear language to the contrary, one must be convicted of a first offense prior to the commission of the second offense in order to receive an enhanced penalty. This does not imply the perpetrator is not sentenced for serial crimes, only that he does not receive the enhanced grading for sentencing purposes.

Madame Justice Todd has appropriately provided a wealth of case law detailing Pennsylvania's jurisprudence on this issue; the need for a prior conviction before grading enhancement is the general rule, only to be altered when the legislature so decides. Therefore, in my view, there is no need to question examine what philosophy a statute reflects. Rather, when considering grading enhancements, the question should be, "does the plain language of the statute warrant enhanced grading for multiple counts?" In this case, the language does not afford such an enhancement.