[J-36-2016] [MO: Dougherty, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| A.S., | : | No. 24 MAP 2014 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court dated March 7, |
| | : | 2014 at No. 473 MD 2012 |
| v. | : | |
| | : | ARGUED: March 8, 2016 |
| | : | |
| PENNSYLVANIA STATE POLICE, | : | |
| | : | |
| Appellant | : | |

## DISSENTING OPINION

**JUSTICE TODD**                  **DECIDED: August 15, 2016**

As the majority recognizes, this appeal is primarily a reconsideration of the issue this Court reviewed, but could not authoritatively resolve, in Commonwealth v. Gehris, 54 A.3d 862 (Pa. 2012): the meaning of Megan's Law II's provision that "[a]n individual with two or more convictions of any of the offenses set forth in" 42 Pa.C.S. § 9795.1(a) "shall be subject to lifetime registration" as a sexual offender. 42 Pa.C.S. § 9795.1(b)(1). I authored the Opinion in Support of Affirmance ("OISA") in Gehris, expressing the view that the foregoing provision clearly and unambiguously provides that any individual who accrues multiple convictions for offenses set forth in Section 9795.1(a) is subject to lifetime registration as a sexual offender. Gehris, 54 A.3d at 862 (OISA). Then-Chief Justice Castille authored the Opinion in Support of Reversal ("OISR") in Gehris, reasoning that this provision, read in light of Megan's Law II's remaining provisions, incorporates a "recidivist philosophy" and, therefore, provides that only an individual who is convicted of one or more offenses set forth in Section 9795.1(a), and subsequently reoffends and is convicted again of one or more offenses set forth in Section 9795.1(a), is subject to lifetime registration as a sexual offender.

Gehris, 54 A.3d at 868 (OISR).  Because I continue to view the salient statutory provisions as clear and unambiguous, and because, in my view, Section 9795.1 incorporates no such recidivist philosophy, the analyses of the OISR in Gehris and the majority hereinabove notwithstanding, I respectfully dissent.

As I expressed in my OISA in Gehris, in my view, Section 9795.1(b)(1) clearly and unambiguously provides that any individual who accrues multiple convictions of offenses set forth in 42 Pa.C.S. § 9795.1(a) is subject to lifetime registration as a sexual offender:

> The plain language of Section 9795.1(b)(1) specifies: "The following individuals shall be subject to lifetime registration: (1) An individual with two or more convictions of any of the offenses set forth in subsection (a)."  This language, when viewed in accordance with its commonly understood and ordinary meaning, requires any individual who is convicted two or more times of the particular offenses set forth in subsection (a) to register for life.  Relevant to the question of whether the legislature intended to require lifetime registration in situations where the multiple convictions stemmed from acts which were part of one criminal episode, I deem the legislature, through the use of the unadorned language, "[a]n individual with two or more convictions of any of the offenses set forth in subsection (a)," to have elected not to require any particular sequential or temporal ordering of the multiple convictions in order for the lifetime registration requirements to apply. Rather, the legislature simply mandated that, at the point in time at which a defendant acquires two or more convictions for specified sexual offenses against children, the registration requirement is triggered.

Gehris, 54 A.3d at 866 (OISA).  The majority recognizes that this provision's language, at least in isolation, provides as much.  See Majority Opinion at 16 (noting that "oftentimes the meaning — or ambiguity — of certain words or phrases may only become evident when placed in context").  Yet, the majority reasons that this language,

considered in light of the remainder of Megan's Law II's provisions, as well as its purported "recidivist philosophy," among other factors, is ambiguous, and, indeed, provides that only an individual who is convicted of one or more offenses set forth in Section 9795.1(a), subsequently reoffends, and is convicted again of one or more offenses set forth in Section 9795.1(a), is subject to lifetime registration as a sexual offender. See Majority Opinion at 12-19. I remain unpersuaded.

First, the "core of the [Gehris] OISR's ensuing analysis," which the majority adopts today, is as follows:

> [W]e are satisfied that section 9795.1, which sets forth a graduated scheme for Megan's Law registration, similar in nature to the graduated schemes discussed in this Court's prior case law, encompasses the recidivist philosophy in addition to its perhaps more obvious goals of public protection and deterrence. Of course, registration may not be punitive for purposes of the constitutional protections afforded to offenders, as this Court concluded in [Commonwealth v.] Williams, [832 A.2d 962 (Pa. 2003)]. Nevertheless, registration obviously has serious and restrictive consequences for the offender, including prosecution if the requirement is violated. Registration can also affect the offender's ability to earn a livelihood, his housing arrangements and options, and his reputation. See also Fross v. County of Allegheny, . . . 20 A.3d 1193 ([Pa.] 2011).
>
> The "two or more convictions" language in subsection (b) seems clear and unambiguous on the surface. But if Section 9795.1 is viewed as a whole and the General Assembly's legislative findings and declaration of policy at 42 Pa.C.S. § 9791 are read closely, it is clear that the primary concern is with sexually violent predators. Considering the nine subsections in Section 9791, the term "sexually violent predator" appears nine times, particularly in the provision addressing repeat offenders: "sexually violent predators pose a high risk of engaging in further offenses even after being released from incarceration or commitments

and that protection of the public from this type of offender is a paramount governmental interest." 42 Pa.C.S. § 9791(a)(2). References to nonviolent offenders are comparatively few, just four in all, and two of these pertain specifically to recent amendments accounting for the circumstance of released "offenders" who may be homeless or without a "fixed place of habitation." See 42 Pa.C.S. § 9791(a)(1) & (b)(3); see also Commonwealth v. Wilgus, 40 a.3d 1201 (Pa. 2012).

It is evident that in drafting Section 9795.1, the General Assembly meant to set up a graduated registration scheme. In this tiered approach, more serious (primarily violent) offenders and "true" recidivists who squander a given opportunity to reform are understandably subject to lifetime requirements. By contrast, lesser, first-time offenders, especially those who are nonviolent, receive an opportunity for rehabilitation and eventual freedom from the requirements if they "stay on the path" for ten years.

* * *

[W]e would conclude that Section 9795.1 embodies the recidivist philosophy and reflects a belief that first-time and lesser offenders are capable of reform and rehabilitation if given an opportunity to do so under the still-punitive aegis of relatively lighter discipline, as well as the threat of harsher treatment next time, should there be a next time.

Majority Opinion at 13-15 (quoting Gehris, 54 A.3d at 878-79 (OISR)) (alterations original). This rationale rests its conclusion on essentially two premises:

(1) Section 9795.1 contains a "graduated scheme" and is at least somewhat punitive in nature, and therefore analogous to the statutes in Commonwealth v. Dickerson, 621 A.2d 990 (Pa. 1993), Commonwealth v. Shiffler, 879 A.2d 185 (Pa. 2005), Commonwealth v. McClintic, 909 A.2d 1241 (Pa. 2006), and Commonwealth v. Jarowecki, 985 A.2d 955 (Pa. 2009), which contain similarly graduated schemes and are punitive in nature, and which this Court has interpreted

as incorporating a "recidivist philosophy" requiring conviction, re-offense, and subsequent conviction; and

(2) The legislative findings incorporated into Megan's Law II's provisions, its statement of purpose, and their oft-repeated use of the term "sexually violent predator" as compared to their references to "nonviolent offenders" evidence a primary concern with recidivists.

In my view, neither premise leads to the majority's conclusion.

First, as detailed in my OISA in Gehris, the language of Section 9795.1 is significantly distinct from the language of the statutes at issue in Dickerson and its progeny:

> [T]he specific nature of the language employed in the statutes at issue in [Dickerson, Shiffler, McClintic, and Jarowecki]—i.e. "[w]here the person had at the time of the commission of the current offense **previously been convicted**," in the case of 42 Pa.C.S.A. (s) 9714 (a)(2) (emphasis added), and "**second or subsequent offense**," in 18 Pa.C.S. § 6312(d)(2) (emphasis added)—implies a requirement that there be a separation in time between imposition of the successively greater sanctions in order to give the individual a chance to change his or her behavior in response to the lesser sanction. By contrast, as noted above, the language of Section 9795.1(b)(1) has no such language suggesting temporal separation is required between the commission of the enumerated offenses for the lifetime registration requirement to apply.

Gehris, 54 A.3d at 866 (OISA) (emphasis original). Thus, insofar as the language of Section 9795.1 is not analogous, it is improper for this Court to treat it as such. See 1 Pa.C.S. § 1921(b).

Moreover, this Court has previously held that the purpose of Section 9795.1 is non-punitive, further weakening the analogy to the punitive statutes at issue in Dickerson and its progeny, as well as their underlying purpose – **punishing** with increasing force in an effort to avoid recidivism. As I stated in Gehris:

[T]he primary purpose of the registration requirement is not to punish an individual convicted of sexual offenses, but, instead, registration is mandated for the protection of the public. See [Commonwealth v.] Williams, 574 Pa. [487,] 504 832 A.2d [962,] 972 [(2003)] ("[T]he legislature's intent in requiring offenders to register with the State Police regarding their whereabouts was not retribution; . . . rather its purpose was to effectuate, through remedial legislation, the non-punitive goal of public safety.") Consequently, unlike the "three strikes" sentencing statute at issue in [Dickerson], [Shiffler], and [McClintic] and the mandatory sentencing for possession of child pornography at issue in [Jarowecki], which imposed successively greater levels of penal discipline for each successive conviction for the same type of crime in order to dissuade an individual from repeating that criminal conduct in the future, the principal objective of the registration requirement is not to alter the convicted individual's behavior through punishment.

Gehris, 54 A.3d at 866-67 (OISA).

Bearing these distinctions in mind, the only remaining similarity between Megan's Law II and the statutes at issue in Dickerson and its progeny relied upon by the majority is that each possesses a "graduated scheme" – i.e., each imposes different levels of "punishment" corresponding to increasingly severe offenses. Yet, as I explained in my Gehris OISA, in light of its distinct text and purpose, it is more appropriate to view the "graduated scheme" in Section 9795.1 as estimating that persons who frequently commit sexual offenses are more dangerous to the public, requiring lengthier registration:

Although the overall structure of Section 9795.1 conditions its registration scheme, in part, on the nature of particular sexual offenses, since lifetime registration is required of those who commit the arguably more serious offenses enumerated in Section 9795.1(b)(2), I find it significant that the legislature also chose to impose the very same lifetime registration requirement for those convicted of two or more of any of the offenses enumerated in Section 9795.1(a)(1),

the vast majority of which are offenses against children. This, from my perspective, evidences a deliberate legislative judgment, consistent with its objective of protecting public safety, to make the differing length of registration requirements dependent not only on the nature of the specific sexual offenses for which an individual is convicted, but, also, on the occurrence of a multiplicity of certain types of offenses, particularly those committed against children. In my view, this reflects a considered determination by the legislature that, in order to protect the safety and general welfare of the public, the frequency with which a convicted defendant is determined to have engaged in certain types of prohibited conduct with children is a particularly important factor in determining whether he or she should be subject to lifetime registration.

Gehris, 54 A.3d at 867-68 (OISA).[1]

---

[1] Moreover, even assuming Section 9795.1's increasing periods of registration are directed at increasingly serious offenses, such proposition does not necessarily lead to the conclusion that Section 9795.1(b)(1) applies solely to recidivists. Under such a view, the General Assembly would necessarily have to deem an individual who lures a child into a motor vehicle, kidnaps the child, and forces the child to participate in prostitution and child pornography – an individual who, under the majority's interpretation of Section 9795.1(b)(1), need only register as a sexual offender for 10 years – as having committed a less serious offense than, for example, an individual who, for example, is convicted of possessing child pornography and subsequently reoffends.

In response, the majority contends this illustration is inapt because the aforementioned offender may well be determined to be a sexually violent predator subject to lifetime registration. Majority Opinion at 15 n.11. Furthermore, Justice Donohue, in her concurrence, rejects this position because a "serial, violent sex offender, who happens to evade prosecution in between the commission of his criminal acts" is likely to be deemed a sexually violent predator subject to lifetime registration pursuant to Section 9795.1(b)(3). Concurring Opinion (Donohue, J.) at 4-5. The concurrence reasons that the classification process and the imposition of lifetime registration for sexually violent predators is a "safeguard" consistent with the statute's recidivist philosophy subjecting "more serious (primarily violent) offenders and 'true' recidivists who squander a given opportunity to reform." Id. at 4-5.

In my view, the concurrence's reliance on this "safeguard" does not account for the Commonwealth's significant evidentiary burden necessary to classify offenders as sexually violent predators. See Williams, supra; 42 Pa.C.S. §§ 9792, 9795.1, 9795.4 (continued…)

Turning to the majority's view that Section 9795.1 is ambiguous in light of Megan's Law II's emphasis on protecting the public from sexually violent predators, I first note that the majority does not explain how Section 9795.1(b)(1)'s language acquires additional potential meanings in light of those provisions. Moreover, I find the majority's analysis on this point, insofar as it compares the number of times the term "sexually violent predator" appears in the salient statutory provisions to the number of references to nonviolent offenders, unpersuasive as an indicator that the General Assembly was primarily concerned with protecting the public from recidivists who have failed to reform after conviction as opposed to individuals who engage in multiple sex crimes.

I am likewise unpersuaded by the majority's supplemental analysis buttressing the <u>Gehris</u> OISR's conclusion that Section 9795.1(b)(1) is ambiguous. First, the majority notes the longstanding principle that language must be viewed in the context of a statute as a whole, that neither the OISA or OISR in <u>Gehris</u> directly cited this principle, and that the OISR's approach is "consonant with" it. <u>See</u> Majority Opinion at 15-16. Although I do not disagree with the majority that words must be considered in context, the majority does not explain **how** Section 9795.1(b)(1)'s language becomes ambiguous in context.

The majority next seeks to support its finding that Section 9795.1(b)(1) is ambiguous by reference to "[t]he fact that it never occurred to those in the trenches" –

---

(…continued)

(2000). Moreover, insofar as both violent and non-violent one-time offenders, multiple offenders who do not happen to be apprehended, and those the majority and concurrence refer to as "true" recidivists, are all subject to assessment and potential classification as sexually violent predators, I do not view the assessment process and potential lifetime registration as consistent with a particular legislative concern for "true" recidivists.

i.e. the defendant, his counsel, the Commonwealth, and the court – "that a first-time, non-violent and non-SVP offender could be subject to anything but the lower-tier period of registration," reasoning that such fact "provides some further measure of support to the conclusion that the provision, considered in context, is at least reasonably amenable to multiple interpretations." Id. at 17. In my view, the mere fact that others – even members of the bench and bar – have adopted what amounts to a misinterpretation of a statute – should not bear on the discrete legal question of whether its text is **reasonably** susceptible to such interpretation.[2]

Finally, the majority reasons that "there is some validity in the point made in the dissent below that it would be absurd and unreasonable if a single act, giving rise to a single prosecution yielding two convictions for overlapping predicate offenses, subjected an offender to lifetime registration." Id. at 18. I disagree. The enactment of statutes criminalizing (or requiring registration for) "overlapping predicate offenses" arising from one act may also be viewed as evidencing a legislative judgment that a single act may create distinct harms or, as salient here, future risks.

In closing, I recognize that the appellant in this case is not the typical offender to whom sexual offender registration requirements apply. Appellant and the victim herein were engaged in a consensual and legally permissible sexual relationship when Appellant solicited and created the illegal pornographic images that give rise to his

---

[2] The majority also considers, but does not definitively resolve, whether Section 9795.1(b)(1) is penal in nature, requiring application of the rule of lenity which mandates strict construction of statutes in a defendant's favor. See Majority Opinion at 17. Although I rejected this approach as inconsistent with the statute's remedial purpose in my OISA in Gehris, see Gehris, 54 A.3d at 865-66 (OISA), insofar as the majority does not rest its decision today on application of that rule, I think it unnecessary to presently repeat that view *in toto*. I do note, however, that an unambiguous statute is capable of only one reasonable interpretation, and, thus, is not capable of, much less in need of, strict or expansive construction. See Oliver, supra.

convictions. Nevertheless, it is this Court's duty to consider the proper interpretation of Section 9795.1 not solely as it applies to the parties herein, but as it applies to future parties in cases across the Commonwealth.

For these reasons, I respectfully dissent.